J-S56004-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| VICTOR TIRADO | : | |
| | : | |
| Appellant | : | No. 442 MDA 2018 |

Appeal from the Judgment of Sentence February 7, 2018
In the Court of Common Pleas of Lancaster County
Criminal Division at No(s):  CP-36-CR-0001914-2017

BEFORE:  GANTMAN, P.J., KUNSELMAN, J., and MUSMANNO, J.

MEMORANDUM BY GANTMAN, P.J.:                **FILED NOVEMBER 14, 2018**

Appellant, Victor Tirado, appeals from the judgment of sentence entered in the Lancaster County Court of Common Pleas, following his jury trial conviction for first-degree murder.[1]  We affirm and grant counsel's petition to withdraw.

The relevant facts and procedural history of this case are as follows.  On September 9, 2015, at approximately 11:45 p.m., police received a dispatch indicating someone had been shot in the parking lot of Molly's Pub.  When police arrived on scene, they observed Victim lying on the ground in a pool of blood.  Victim was still alive at that time.  An ambulance transported Victim to the hospital, where he died a few days later.  An autopsy confirmed the

_____

[1] 18 Pa.C.S.A. § 2502(a).

cause of death was a gunshot wound to the head and the manner of death was homicide.

Police investigation revealed that shortly before the shooting, Victim was at home in his apartment complex (located behind Molly's Pub) with his fiancée, Kristin McNeil. Victim and Ms. McNeil were in bed when Victim received a phone call. Victim told Ms. McNeil that he was going outside to meet "Vic," whom Ms. McNeil identified as Appellant. Victim met with Appellant in the alleyway behind his apartment complex to sell Appellant a "20 piece" (20 ounces of crack). Appellant's friends, David Ramos-Perez and Harry Espada, were waiting in the car for Appellant during the drug exchange. Mr. Ramos-Perez heard a gunshot and then saw Appellant run back to the car. Appellant stated: "Let's get out of here" and "it only took one shot."

On February 1, 2018, a jury convicted Appellant of first-degree murder. The court sentenced Appellant on February 7, 2018, to life imprisonment. Appellant timely filed a notice of appeal on March 9, 2018. On March 12, 2018, the court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On April 2, 2018, counsel filed a statement of intent to file a brief under *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), per Pa.R.A.P. 1925(c)(4).

As a preliminary matter, appellate counsel seeks to withdraw her representation pursuant to *Anders* and *Commonwealth v. Santiago*, 602

Pa. 159, 978 A.2d 349 (2009). **Anders** and **Santiago** require counsel to: 1) petition the Court for leave to withdraw, certifying that after a thorough review of the record, counsel has concluded the issues to be raised are wholly frivolous; 2) file a brief referring to anything in the record that might arguably support the appeal; and 3) furnish a copy of the brief to the appellant and advise him of his right to obtain new counsel or file a *pro se* brief to raise any additional points the appellant deems worthy of review. **Santiago, supra** at 173-79, 978 A.2d at 358-61. Substantial compliance with these requirements is sufficient. **Commonwealth v. Wrecks**, 934 A.2d 1287, 1290 (Pa.Super. 2007).

In **Santiago, supra**, our Supreme Court addressed the briefing requirements where court-appointed appellate counsel seeks to withdraw representation:

> Neither **Anders** nor **McClendon**[2] requires that counsel's brief provide an argument of any sort, let alone the type of argument that counsel develops in a merits brief. To repeat, what the brief must provide under **Anders** are references to anything in the record that might arguably support the appeal.
>
> *        *        *
>
> Under **Anders**, the right to counsel is vindicated by counsel's examination and assessment of the record and counsel's references to anything in the record that arguably supports the appeal.

**Santiago, supra** at 176, 177, 978 A.2d at 359, 360. Thus, the Court held:

---

[2] **Commonwealth v. McClendon**, 495 Pa. 467, 434 A.2d 1185 (1981).

> [I]n the **Anders** brief that accompanies court-appointed counsel's petition to withdraw, counsel must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous.  Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Id.* at 178-79, 978 A.2d at 361.

Instantly, appellate counsel filed a petition to withdraw.  The petition states counsel conducted a thorough review of the record and determined the appeal is wholly frivolous.  Counsel also supplied Appellant with a copy of the brief and a letter explaining Appellant's right to retain new counsel or proceed *pro se* to raise any additional issues Appellant deems worthy of this Court's attention.[3]  In the **Anders** brief, counsel provides a summary of the facts and procedural history of the case.  Counsel's argument refers to relevant law that might arguably support Appellant's claims.  Counsel further states the reasons for her conclusion that the appeal is wholly frivolous.  Therefore, counsel has substantially complied with the requirements of **Anders** and **Santiago**.

_____

[3] On August 22, 2018, appellate counsel filed an application for correction, explaining she initially sent the **Anders** brief, petition to withdraw, and letter advising Appellant of his rights to SCI-Graterford, but the documents were returned to her because Appellant had been moved to SCI-Phoenix.  Counsel subsequently served the documents on Appellant at the correct address.  Counsel attached a corrected proof of service to her application for correction.  We grant counsel's application for correction.

Counsel raises the following issue on Appellant's behalf:

SHOULD APPELLATE COUNSEL BE GRANTED LEAVE TO WITHDRAW AS COUNSEL BECAUSE ANY APPELLATE ISSUES IN THE INSTANT CASE ARE FRIVOLOUS?

(**Anders** Brief at 4).[4]

Appellant argues: (1) the evidence was insufficient to convict him of first-degree murder; (2) the verdict was against the weight of the evidence[5]; (3) the trial court erred by failing to give the "corrupt and polluted source" jury instruction; (4) the trial court improperly admitted video evidence depicting Appellant walking in prison; and (5) he was denied a fair trial due to the tainted jury as a result of media coverage of this case. We disagree.

When examining a challenge to the sufficiency of evidence:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may

_____

[4] Appellant has filed a *pro se* response that contests only the sufficiency of the evidence, which counsel also raises in the **Anders** brief.

[5] Appellant also challenges Kevin Beerman's testimony concerning the shooter's height; Ms. McNeil's allegedly inconsistent testimony; Mr. Ramos-Perez's credibility where he hoped to receive consideration in exchange for his testimony; the jury's verdict in light of Mr. Espada's recantation testimony at trial; and the comparison of the suspect depicted on the surveillance footage from the night of the murder with the video of Appellant walking in prison. Each of these claims is a discrete challenge to the weight of the evidence.

be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa.Super. 2011), *appeal denied*, 613 Pa. 642, 32 A.3d 1275 (2011) (quoting *Commonwealth v. Jones*, 874 A.2d 108, 120-21 (Pa.Super. 2005)).

The Crimes Code defines first-degree murder as follows:

**§ 2502. Murder**

**(a)    Murder of the first degree.**—A criminal homicide constitutes murder of the first degree when it is committed by an intentional killing.

18 Pa.C.S.A. § 2502(a).

To find a defendant guilty of first-degree murder a jury must find that the Commonwealth has proven that he…unlawfully killed a human being and did so in an intentional, deliberate and premeditated manner.

It is the element of a willful, premeditated and deliberate intent to kill that distinguishes first-degree murder from all other criminal homicide. Specific intent to kill may be inferred from the defendant's use of a deadly weapon upon a vital part of the victim's body.

The *mens rea* required for first-degree murder, specific intent to kill, may be established solely from circumstantial evidence.

- 6 -

*Commonwealth v. Schoff*, 911 A.2d 147, 159-60 (Pa.Super. 2006) (internal citations omitted).

Instantly, the Commonwealth presented at trial, *inter alia*: (1) testimony from multiple police officers who responded to the crime scene on the night of the murder, observed Victim lying on the ground and bleeding from the head, and recovered $40.00, crack cocaine, and a Bersa 380 gun from Victim's person, and a .45 caliber shell casing from the crime scene;[6] (2) testimony from Jasmin Raqib that she saw a man dressed all in black with a hoodie walking toward the alleyway near Molly's Pub, heard a gunshot, saw a man bleeding on the ground, and called 911; (3) testimony from Kevin Beerman that he heard a loud "pop" outside his window and saw someone wearing a dark hoodie and dark pants walking quickly from the scene; (4) testimony from Sergeant Randell Zook that he collected video footage from the crime scene; the video showed a suspect who had a distinct limp/gait; (5) testimony from Victim's fiancée, Ms. McNeil, that shortly before the murder Victim received a phone call and said he was going to meet "Vic," whom Ms. McNeil identified as Appellant; (6) testimony from Mr. Ramos-Perez that on the night of the murder, he accompanied Appellant to meet up with Victim to buy a "20 piece," or 20 ounces of crack; Appellant was wearing a black hoodie, black sweatpants, and black shoes; Mr. Ramos-Perez saw Appellant walk into

---

[6] The parties stipulated that it is impossible to shoot a .45 caliber bullet from the gun recovered on Victim's person.

the alley, heard a gunshot, and then saw Appellant run back to the car; Appellant said: "Let's get out of here" and "it only took one shot"; Mr. Ramos-Perez confirmed that Appellant walks with a limp; Mr. Ramos-Perez hoped to receive consideration on outstanding charges in exchange for his testimony; (7) testimony from Harry Espada that he accompanied Appellant to buy drugs from Victim on the night of the murder; Appellant was dressed in all black; Mr. Espada said he initially told police that Appellant had admitted shooting Victim, but Mr. Espada recanted that statement at trial; (8) testimony from Detective Stephen Owens that he analyzed cell phone records during investigation of this case, and Appellant called Victim at 10:48 p.m. on the night of the murder; Victim did not answer that call but he called Appellant back at 10:53 p.m.; (9) testimony from Detective Stanley Roache that when he interviewed Mr. Espada during investigation of this case, Mr. Espada said Appellant had confessed to shooting Victim; Detective Roache collected video evidence of Appellant walking in prison while incarcerated before trial and the video confirmed Appellant has a unique walk/gait; and (10) testimony from Dr. Wayne Ross that he performed an autopsy of Victim on September 14, 2015, and determined Victim's cause of death was a gunshot wound to the head and the manner of death was homicide. Viewed in the light most favorable to the Commonwealth as verdict-winner, the evidence was sufficient to convict Appellant of first-degree murder. *See* 18 Pa.C.S.A. § 2502(a); ***Hansley, supra***; ***Schoff, supra***.

Regarding Appellant's remaining claims of error, preliminarily, a challenge to the weight of the evidence generally must be preserved before the trial court, per Pa.R.Crim.P. 607 that provides:

**Rule 607.  Challenges to the Weight of the Evidence**

(A)  A claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for a new trial:

(1)  orally, on the record, at any time before sentencing;

(2)  by written motion at any time before sentencing; or

(3)  in a post-sentence motion.

Pa.R.Crim.P. 607(A)(1)-(3).  "As noted in the comment to Rule 607, the purpose of this rule is to make it clear that a challenge to the weight of the evidence must be raised with the trial judge or it will be waived." *Commonwealth v. Gillard*, 850 A.2d 1273, 1277 (Pa.Super. 2004), *appeal denied*, 581 Pa. 672, 863 A.2d 1143 (2004).

Additionally, a defendant waives a challenge to the court's failure to issue a jury instruction where the defendant did not request that instruction. *Commonwealth v. Powell*, 598 Pa. 224, 956 A.2d 406 (2008), *cert. denied*, 556 U.S. 1131, 129 S.Ct. 1613, 173 L.Ed.2d 1000 (2009).  Similarly, to preserve an issue for review, a party must make a timely and specific objection to the admission of evidence.  *Commonwealth v. Duffy*, 832 A.2d 1132 (Pa.Super. 2003), *appeal denied*, 577 Pa. 694, 845 A.2d 816 (2004).  *See also* Pa.R.A.P. 302(a) (explaining general rule that issues not raised before

trial court are waived and cannot be raised for first time on appeal).

Instantly, Appellant did not preserve his challenge to the weight of the evidence before the trial court by any of the methods set forth in Rule 607(A). **See** Pa.R.Crim.P. 607(A)(1)-(3); **Gillard, supra**. Appellant also failed to request a "corrupt and polluted source" jury instruction. **See Powell, supra**. Similarly, Appellant did not object to the Commonwealth's pre-trial motion *in limine* to admit the video of Appellant walking in prison or object to its admission during trial. **See Duffy, supra**. Further, Appellant did not request a change of venue or seek other relief before the trial court based on the alleged pre-trial publicity of this case.[7] **See** Pa.R.A.P. 302(a). Therefore, Appellant's challenge to the sufficiency of the evidence merits no relief; and his other issues are waived.[8] Following our independent review of the record, we agree the appeal is frivolous and grant counsel's petition to withdraw. Accordingly, we affirm.

Judgment of sentence affirmed; counsel's petition to withdraw is granted.

_____

[7] Moreover, during *voir dire*, the court asked the prospective jurors if they recalled reading or hearing anything about this case. Juror #81 was the only juror to respond affirmatively and was stricken for cause.

[8] Appellate counsel acknowledges that ineffectiveness claims must generally wait until collateral review. **See Commonwealth v. Burno**, 626 Pa. 30, 94 A.3d 956 (2014), *cert. denied*, ___ U.S. ___, 135 S.Ct. 1493, 191 L.Ed.2d 435 (2015) (reiterating general rule that claims of ineffective assistance of counsel should be deferred until collateral review).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/14/2018