J-S32044-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| BRANDON BLACKSON, | : | |
| | : | |
| Appellant | : | No. 3510 EDA 2017 |

Appeal from the Judgment of Sentence August 10, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0006605-2016

BEFORE: SHOGAN, J., NICHOLS, J., and MURRAY, J.

MEMORANDUM BY MURRAY, J.: **FILED JULY 17, 2019**

Brandon Blackson (Appellant) appeals from the judgment of sentence imposed after the trial court found him guilty of forgery, theft by unlawful taking, theft by deception, receiving stolen property, loitering, neglect of care of a dependent person, and three counts each of tampering with public records and securing execution documents by deception.[1] Upon review, we affirm.

The trial court summarized the relevant facts and procedural history as follows:

> The underlying charges stem from the May 4, 2016 arrest of [Appellant] for stealing a significant amount of funds and property from a dependent elderly individual. After a preliminary hearing, arraignment, and scheduling conferences and colloquy, [Appellant] elected to be tried without a jury on April 20, 2017, [with this trial court presiding]. Live testimony was heard from the victim's relatives including Orlando Hart, the authorized representative of the Citizen Bank, former tenants, as well as the

---

[1] 18 Pa.C.S.A. §§ 4101, 3921, 3922, 3925, 5506, 2713, 4911, and 4114.

attorneys who handled the fraudulent deed transfers. Physical evidence was introduced including the records reflective of each impacted bank account and the associated deed transfers.

On April 25, 2017, [Appellant] was found guilty as charged [of the above crimes]. . . . Following the entry of the guilty verdicts, this [c]ourt directed the completion of Presentence Investigative Reports and Mental Health Evaluations and scheduled the sentencing hearing. On August 10, 2017, after review of all completed presentence reports and consideration of all relevant data submitted and reflection of testimony and arguments . . . [the trial court sentenced Appellant to] a minimum period of confinement of [6] years to a maximum period of confinement of [12] years, plus [20] years reporting probation. The length of probation was determined to facilitate payment of restitution in the amount of $306,000, which was the calculated combined value of stolen funds and real property, to the [e]state of [the victim]. [Appellant] was permitted the ability to reduce his restitution amount if he relinquished title to the real properties that he had fraudulently obtained. To date he has refused to do so.

Trial Court Opinion, 10/18/18, at 4-7.

Appellant filed a timely post-sentence motion, which the trial court denied on September 28, 2017. Appellant filed this timely appeal on October 25, 2017. Both Appellant and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925.

Appellant presents two issues for our review:

[1.] Did the lower court err in permitting the Commonwealth to introduce hearsay evidence of certain bank records and pension checks that did not qualify under an appropriate hearsay exception?

[2.] Did the lower court abuse its discretion in imposing a sentence based upon an incorrect Offense Gravity Score that also exceeded the guidelines without a sufficient basis and contained an unconscionably and arbitrarily long period of supervision?

Appellant's Brief at 4.[2]

In his first issue, Appellant argues that the trial court erred in permitting the Commonwealth to introduce bank and pension check records under the "records of a regularly conducted activity" exception to the hearsay rule. **See** Appellant's Brief at 9. Our standard of review is as follows:

> It is well settled that the admission of evidence is solely within the discretion of the trial court, and a trial court's evidentiary rulings will be reversed on appeal only upon an abuse of that discretion. An abuse of discretion will not be found based on a mere error of judgment, but rather occurs where the court has reached a conclusion that overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.

**Commonwealth v. Hicks**, 151 A.3d 216, 224 (Pa. Super. 2016) (citations omitted).

Hearsay "is defined as an out-of-court statement, which is offered in evidence to prove the truth of the matter asserted." **Commonwealth v. Busanet**, 54 A.3d 35, 68 (Pa. 2012) (citing Pa.R.E. 801(c)). Hearsay evidence is inadmissible unless an applicable exception provided by law applies. Pa.R.E. 802. The records of a regularly conducted activity exception to the hearsay rule provides:

---

[2] Appellant's Rule 1925(b) statement raises an additional illegal sentence claim not presented in his appellate brief. **See** Rule 1925(b) Statement, 5/21/18, at 1. Because Appellant abandoned the claim in his brief, we will not address it. **See** Appellant's Brief at 4; **see also Commonwealth v. Briggs**, 12 A.3d 291, 310 n.19 (Pa. 2011), *cert. denied*, 132 S. Ct. 267 (2011) (refusing to address claim appellant raised with trial court but subsequently abandoned in brief).

The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness: . . .

A record (which includes a memorandum, report, or data compilation in any form) of an act, event or condition if:

(A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;

(B) the record was kept in the course of a regularly conducted activity of a "business", which term includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit;

(C) making the record was a regular practice of that activity;

(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

(E) the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness.

Pa.R.E. 803(6).

We have explained:

[Pa.R.E.] 803(6) was amended in 2001 consistent with the December 1, 2000 amendments to F.R.E. 803(6) that permit records of regularly conducted activity to be **authenticated by certification**. This amendment is designed to save the expense and time consumption caused by calling needless foundation witnesses. The notice requirements provided in Pa.R.E. 902(11) and (12) will give other parties a full opportunity to test the adequacy of the foundation.

***Commonwealth v. Schoff***, 911 A.2d 147, 155 (Pa. Super. 2006) (emphasis in original).

Rule 902(11), referenced in subsection (D) of Rule 803(6), provides:

The following items of evidence are self-authenticating; they require no extrinsic evidence of authenticity in order to be admitted: . . . **(11) Certified Domestic Records of a Regularly Conducted Activity.** The original or a copy of a domestic record that meets the requirements of Rule 803(6)(A)-(C), as shown by a certification of the custodian or another qualified person that complies with Pa.R.C.P. No. 76. Before the trial or hearing, the proponent must give an adverse party reasonable written notice of the intent to offer the record--and must make the record and certification available for inspection--so that the party has a fair opportunity to challenge them.

Pa.R.E. 902(11).

At the April 20, 2017 pre-trial hearing, the Commonwealth presented its motion to introduce five sets of records via the Rule 803(6) records of a regularly conducted activity hearsay exception. *See* N.T., 4/20/17, at 24, 34. Specifically, the Commonwealth moved to introduce records pertaining to M&T Bank, PNC Bank, TD Bank, Wells Fargo Bank, and the victim's General Electric pension checks, pursuant to Pa.R.E. 803(6)(D). *See id.* at 23-37. The Commonwealth sought to introduce the records by certification, as provided for in Rule 803(6)(D), in lieu of providing testimony from a records custodian from each bank or company. *Id.* These certifications, which were all signed by respective representatives subject to the penalties of 18 Pa.C.S.A. § 4904, were provided to defense counsel prior to Appellant's trial. *Id.* at 26, 34, 36.

Defense counsel objected to the admission of the records based upon the certifications, averring that there was no "proper foundation for these items to come in under Rule 803(6)." *Id.* at 29. *See also id.* at 36 (With regard to the victim's pension checks, defense counsel stated: "I would just

make the same objection. I have nothing additional, beyond what I said regarding the banks."). However, when the trial court asked: "Is there anything within the records themselves that indicate to you on behalf of your client that they are not trustworthy[,]" defense counsel responded: "No, Your Honor." N.T., 4/20/17, at 33. *See also id.* at 37 (defense counsel again responded no when the trial court inquired as to any indication of untrustworthiness with regard to the victim's pension checks). Ultimately, and pursuant to the Commonwealth's proffered certifications, the trial court admitted the records under Rule 803(6). *Id.* at 34, 37.

In support of its decision to admit the records and pension checks into evidence, the trial court explained:

> In the instant matter, a representative from Citizens Bank testified as the Custodian of Records and analyst of the records sourced from Citizen[s] Bank that demonstrated the multiple withdrawals from the accounts owned by [the victim] and corresponding transfers and deposits into the Appellant's accounts with M&T Bank, TD Bank, and PNC Bank. Appellant's trial [counsel] objected to the subsequent introduction of additional corroborating records from M&T Bank, TD Bank, PNC Bank, and Wells Fargo, claiming that they were not properly authenticated. This objection however ignored the fact that the records from admittedly authenticated Citizen[s] Bank also included the same supporting data from the other impacted accounts from M&T Bank, TD Bank, PNC Bank, and Wells Fargo data regarding the listed bank[.] Essentially even before the admission discussion the Citizen[s] Bank records and live testimony from the Citizen Bank analyst independently verified the authenticity and trustworthiness of subsequently introduced corresponding records from the receiving banks.
>
> Moreover, the Commonwealth accurately argued that the bank records from M&T Bank, TD Bank, PNC Bank, and Wells Fargo were also deemed admissible under Pennsylvania Rule of

- 6 -

> Evidence 803(6). . . . This statute places the burden on an opposing party to show that the sources of information or other circumstances indicate that a business record is untrustworthy, and thus does not qualify for exception to the hearsay rule. *Commonwealth v. Schoff*, 911 A.2d 147 (Pa. Super. 2006). [Rule] 803(6) also places a burden on the proponent of evidence to show circumstantial trustworthiness. *Id.*
>
> The Commonwealth, as the proponent of the evidence in question, met its burden of proof under Rule 803(6) to show circumstantial trustworthiness of the bank records. First, the Commonwealth had each record certified by the individual bank from which it came, thereby satisfying (A) through (C) of Rule 803(6). Next, the witness from Citizens Bank corroborated the authenticity of the records by testifying that the checks being deposited at the various banks were issued from Citizen[s] Bank, which satisfies the statute's requirement under (D). Finally, the defense was provided with all the bank records and had not provided any evidence or even disputed that any of them were untrustworthy. Because of these reasons, this Court properly permitted the Commonwealth to introduce the bank records into evidence.

Trial Court Opinion, 10/18/18, at 9-10 (citations to notes of testimony omitted).

Upon review, we agree with the trial court's determination that the bank and pension check records were properly admitted pursuant to the records of a regularly conducted activity exception to the hearsay rule. As the trial court notes in its opinion, each of the five Rule 803(6) certifications admitted into evidence certifies that its corresponding records: 1. were made at or near the time the information was transmitted by a person or persons with knowledge of the matters set forth in the documents; 2. were made in the regular practice of each bank or company, and as part of its regular activity; and, 3. were kept in the course of a regularly conducted business activity. *See* Commonwealth

- 7 -

Exhibits 7, 8, 9, 10, and 11; *See also* N.T., 4/25/17, at 244-45 (trial court admitting Commonwealth exhibits into evidence). Further, the Commonwealth complied with the requirements of Rule 902(11) by giving Appellant reasonable notice of its intent to offer the records, and the records and their corresponding certifications were made available for Appellant's inspection at the April 20, 2017 pre-trial hearing. *See* N.T., 4/20/17, at 26, 34, 36. Thus, the records and their certifications met the requirements of subsections (A), (B), (C), and (D) of Rule 803(6).

Further, the Commonwealth met its burden of showing the records' circumstantial trustworthiness by the introduction of the testimony of Citizens Bank Custodian of Records John Rowan, who confirmed that the checks deposited at each of the four other banks were issued by Citizens Bank. *See* N.T., 4/25/17, at 55-59. Appellant failed to refute the Commonwealth's evidence in order to preclude its introduction under Pa.R.E. 803(6)(E) ("[T]he opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness."). To the contrary, Appellant presented no evidence that the records or other circumstances indicated that the records were untrustworthy; instead, defense counsel admitted at the pre-trial hearing that he had no dispute with the records' facial trustworthiness. *See* N.T., 4/20/17, at 33, 37. As the five sets of records and their corresponding certifications fulfill the requirements of Rule 803(6), the trial court properly admitted the evidence under the records of a regularly conducted activity exception to the hearsay rule. Accordingly, Appellant's first issue lacks merit.

In his second issue, Appellant challenges the discretionary aspects of his sentence. "The right to appellate review of the discretionary aspects of a sentence is not absolute, and must be considered a petition for permission to appeal." *Commonwealth v. Buterbaugh*, 91 A.3d 1247, 1265 (Pa. Super. 2014). "An appellant must satisfy a four-part test to invoke this Court's jurisdiction when challenging the discretionary aspects of a sentence." *Id.* We conduct this four-part test to determine whether:

> (1) the appellant preserved the issue either by raising it at the time of sentencing or in a post[-]sentence motion; (2) the appellant filed a timely notice of appeal; (3) the appellant set forth a concise statement of reasons relied upon for the allowance of appeal pursuant to Pa.R.A.P. 2119(f); and (4) the appellant raises a substantial question for our review.

*Commonwealth v. Baker*, 72 A.3d 652, 662 (Pa. Super. 2013) (citation omitted). "A defendant presents a substantial question when he sets forth a plausible argument that the sentence violates a provision of the sentencing code or is contrary to the fundamental norms of the sentencing process." *Commonwealth v. Dodge*, 77 A.3d 1263, 1268 (Pa. Super. 2013) (citations omitted).

Here, Appellant has complied with the first three prongs of the test by raising his discretionary sentencing claims in a timely post-sentence motion, filing a timely notice of appeal, and including in his brief a Rule 2119(f) concise statement. *See* Appellant's Brief at 10. Additionally, by asserting that the trial court erred in failing to provide adequate reasons on the record for imposing a sentence outside of the sentencing guidelines, Appellant has raised

a substantial question.[3] ***See Commonwealth v. Holiday***, 954 A.2d 6, 10

(Pa. Super. 2008) ("A claim that the sentencing court imposed a sentence

outside of the guidelines without specifying sufficient reasons presents a

substantial question for our review.") (citation omitted).

We recognize our standard of review:

> Sentencing is a matter vested in the sound discretion of the sentencing judge. The standard employed when reviewing the discretionary aspects of sentencing is very narrow. We may reverse only if the sentencing court abused its discretion or committed an error of law. A sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision. We must accord the sentencing court's decision great weight because it was in the best position to review the defendant's character, defiance or indifference, and the overall effect and nature of the crime.

***Commonwealth v. Cook***, 941 A.2d 7, 11-12 (Pa. Super. 2007) (citations

omitted).

In reviewing a challenge to a sentence that falls outside of the

guidelines, we are mindful that:

> When imposing a sentence, the sentencing court is required to consider the sentence ranges set forth in the Sentencing Guidelines, but it [is] not bound by the Sentencing Guidelines. ***Commonwealth v. Yuhasz***, [] 923 A.2d 1111, 1118 ([Pa.] 2007)

---

[3] In his second question presented, Appellant references the trial court's incorrect calculation of the Offense Gravity Score with regard to his theft convictions. ***See*** Appellant's Brief at 4. However, Appellant has not developed this issue in the argument section of his brief, and it is therefore abandoned for purposes of our review. ***See Commonwealth v. Barnes***, 924 A.2d 1202, 1202-03 (Pa. 2007) (citation omitted).

("It is well established that the Sentencing guidelines are purely advisory in nature.")[.] . . . The court may deviate from the recommended guidelines; they are "merely one factor among many that the court must consider in imposing a sentence." [*Id.*] at 1118. A court may depart from the guidelines "if necessary, to fashion a sentence which takes into account the protection of the public, the rehabilitative needs of the defendant, and the gravity of the particular offense as it relates to the impact on the life of the victim and the community." *Commonwealth v. Eby*, 784 A.2d 204, 206 (Pa. Super. 2001). When a court chooses to depart from the guidelines however, it must "demonstrate on the record, as a proper starting point, his awareness of the sentencing guidelines." [*Id.* at 206.] Further, the court must "provide a contemporaneous written statement of the reason or reasons for the deviation from the guidelines." 42 Pa.C.S.A. § 9721(b).

When reviewing a sentence outside of the guideline range, the essential question is whether the sentence imposed was reasonable. *Commonwealth v. Walls*, [] 926 A.2d 957, 962 ([Pa.] 2007). An appellate court must vacate and remand a case where it finds that "the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable." 42 Pa.C.S.A. § 9781(c)(3). In making a reasonableness determination, a court should consider four factors:

> (1) The nature and circumstances of the offense and the history and characteristics of the defendant.
>
> (2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.
>
> (3) The findings upon which the sentence was based.
>
> (4) The guidelines promulgated by the commission.

42 Pa.C.S.A. § 9781(d). A sentence may be found unreasonable if it fails to properly account for these four statutory factors. A sentence may also be found unreasonable if the "sentence was imposed without express or implicit consideration by the sentencing court of the general standards applicable to sentencing." *Walls*, 926 A.2d at 964. These general standards mandate that a sentencing court impose a sentence "consistent with the protection of the public, the gravity of the offense as it

- 11 -

relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b).

*Commonwealth v. Sheller*, 961 A.2d 187, 190-91 (Pa. Super. 2008) (some citations omitted).

Moreover:

The [sentencing] court is not required to parrot the words of the Sentencing Code, stating every factor that must be considered under Section 9721(b), however, the record as a whole must reflect due consideration by the court of the statutory considerations at the time of sentencing. A sentencing court's indication that it has reviewed a pre[-]sentence report can satisfy the requirement of placing reasons for imposing sentence on the record. In addition, our Supreme Court has determined that where the trial court is informed by a pre-sentence report, it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed.

*Commonwealth v. Bullock*, 170 A.3d 1109, 1126 (Pa. Super. 2017) (citations omitted).

At the outset of the August 10, 2017 hearing, the trial court stated on the record that it had reviewed Appellant's pre-sentence investigation report. *See* N.T., 8/10/17, at 4-5. Prior to imposing Appellant's sentence, the trial court commented:

[Appellant], I have incorporated into my sentence everything that I have gleaned about you both through the evaluations that have been conducted as well as the unusual facts of this matter and your overall behavior before this [c]ourt continuing to today.

First and foremost, sir, I am struck by your lack of, some folks call it remorse, but of appreciation or understanding or empathy for the extreme damage that you have done to people

- 12 -

that cared for you. It defies every ounce of my person to understand why you did what you did over and over and over again to people who took you in and helped raise you.

You were one of the fortunate ones. You didn't come before me in a situation where they had nowhere else to go. You are extremely intelligent and that's why you're so dangerous, because you used the talents that were given to you to bite the hands that were feeding you. How you can sit here and be so self-serving in your comments, sir, defies all explanation.

Willie and Ernestine took care of you, and how did you repay them? How did you repay this family that took you in and they didn't have to? Because he wasn't physically related to you. Neither was Ernestine. But they took you in. They took care of you. Ernestine was right to comment before she died, "Don't let him in here," because she knew your heart.

Your behavior is the height of selfish behavior. No, you just put your head down. You're not talking right now, I am. Because I had to sit and listen to hear with that entire trial and hear all about how you ripped them off ten ways to Sunday. You took everything, even that man's dignity. To take that man at ninety years of age and have him transported in the filth and degradation, it's well beyond neglect, well beyond. In the senior part of one's years, that is the time of life where you are supposed to be able to relax after the hard work that you put in to creating what you have in life. You took that away in every way - - . . . Every way, shape and form, sir, and without any ounce of remorse or care. And to this day and to this very moment, the person that's looking at me doesn't care at all and is thinking only of himself. If for one moment you had thought of someone else other than yourself, you wouldn't be here. And you should have known better and you should have done better. . . . And don't give me any more BS about what you did or did not know. You knew bloody well what you were doing at every step of the way. I reminded myself of all of the facts in this case. I reminded myself of the comments that Judge Herron made to you before you continued on your path of plunder. So don't tell me. Don't tell me what I know not to be true, because it only makes it worse for you, I'm telling you now.

There is no way that what damage you have done is going to be repaid, but I'm gonna give it a good try, sir, because you

have a long life ahead of you and until you straighten up and fly right, sir, you're gonna have a long, hard road.

* * *

For all the reasons that this [c]ourt has stated as well as incorporated by reference and I will supplement as needed, the sentence of the [c]ourt . . . is as follows. . . . And before I state it, to the extent I am going to deviate from the guidelines, I do so based upon the unique circumstances of this case and the ongoing nature of [Appellant's] behavior, which are aggravating in nature at the very least.

N.T., 8/10/17, at 35-38, 39-40.

The trial court in its opinion expanded further:

As the instant record of the respective hearings conducted shows, this [c]ourt succinctly noted its thorough incorporation and evaluation of all relevant sentencing factors. At the sentencing hearing, this [c]ourt heard various arguments on behalf of [Appellant] as well as from the victim's family members. The Presentence Investigative Reports and Mental Health Evaluations were referenced along with the recommended sentencing guidelines promulgated by the Pennsylvania Sentencing Commission. Appellant glibly testified and informed this [c]ourt that "he had been at CFCF for fifteen months by that time and that he feels like it's not gonna help the matter in a longer sentence of restitution or anything in that manner." He classified his actions as a "white collar crime," but stated that he felt "sympathetic for his actions that were taken even though they were ignorantly done." This [c]ourt noted Appellant's complete lack of any remorse for his actions or empathy for his victims.

After hearing arguments from both sides, this [c]ourt carefully weighed various pertinent factors to arrive at [Appellant's] sentence. This [c]ourt incorporated [Appellant's] extremely apathetic and unapologetic behavior throughout the duration of his trial as well as coldly calculated harm to the helpless victim. The severe impact upon [the victim] and his family was highlighted. The choice to victimize someone who had been so generous to [Appellant] in the past was factored.

- 14 -

Moreover, during the sentencing hearing, while the [c]ourt was reviewing the factors of the sentence, Appellant interrupted on multiple occasions and displayed his disrespect for the justice system and complete lack of regret for his actions. After a thorough incorporation and evaluation of all relevant factors including the applicable promulgated guidelines, and information gleaned from the evaluations, this [c]ourt found that [Appellant's] actions were alarming and the effects were detrimental to both the victim . . . as well as the rest of the [victim's] family. This [c]ourt determined that Appellant posed a danger to the community and presented himself as a likely recidivist who amply showed zero compassion for the impact of his harmful behavior. The imposed Order of Sentence was reasonably supported.

*     *     *

The sentencing guidelines in this case suggested that Appellant be sentenced to nine (9) to sixteen (16) months of confinement for the lead offenses with a deviation of plus or minus nine (9) months. This calculation was based on the calculated offense gravity score of eight (8) and prior record score of zero (0). However, the law sets forth that a sentencing court has no duty to impose the guidelines and they merely serve as a starting point. This Court's consideration of the guidelines and reasons for any deviation were recorded. These factors included the heinous nature of the crime, the disturbing lack of remorse, and the lasting effects that [Appellant's] actions continue to have on the victim and his family as well as risk of future recidivism.

*     *     *

All but the first of each of the felony counts reflected sentences imposed well within the recommended guidelines. Count 1 was slightly longer in confinement length. The longest allowable maximum sentence that [Appellant] could have been sentenced to is sixty-one (61) years. In this case, the aggregate Order of Sentence was one of six (6) years to twelve (12) years of state supervised confinement which was an amount well below the maximum period and entirely within this Court's discretion. The sentencing factors had been recorded following careful consideration.

*     *     *

- 15 -

In sum, this Court reasonably exercised sentencing discretion by imposing the individual sentences of each offense. As the instant record reflects, when sentencing Appellant [], this Court appropriately incorporated the gravity of his forgery and theft, his rehabilitative needs, as well as his likeliness of recidivism.

Trial Court Opinion, 10/18/18, at 12-15, 18 (citations to notes of testimony and numerical parentheticals omitted).

Based on our review of the record, particularly the notes of testimony from the sentencing hearing, we conclude that the trial court provided adequate reasoning in imposing Appellant's sentence. In addition to reviewing Appellant's pre-sentence investigation report, the trial court discussed Appellant's character, his relationship with the victim, the danger he poses to the public, the nature of his crimes, and their severe impact on the victim and his family. As noted, the trial court emphasized the unique circumstances of Appellant's crimes as aggravating factors for the upward departure from the Sentencing Guidelines. Accordingly, we discern no abuse of the trial court's sentencing discretion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/17/19

- 16 -