**COMMONWEALTH of Pennsylvania,**
**Appellee**

**v.**

**Suzanne SCHOFF, Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 5, 2005.

Filed Nov. 2, 2006.

150 

Michael S. Ferguson, Harrisburg, for appellant.

David E. Cook, Asst. Dist. Atty., York, for Com., appellee.

BEFORE: GANTMAN, PANELLA, and POPOVICH, JJ.

OPINION BY GANTMAN, J.:

¶ 1 Appellant, Suzanne Schoff, appeals from the judgment of sentence entered in the York County Court of Common Pleas, following her jury trial conviction of first-degree murder [1] and criminal conspiracy to commit first-degree murder [2] of her ex-husband, Frank L. Schoff III. Appellant asks this Court to determine whether the trial court erred in admitting the testimo-ny of a Department of Social Services social worker, relating to DSS records of three child-abuse investigations initiated by Appellant against her ex-husband. Appellant also asks whether the trial court had an affirmative duty to give a caution-ary instruction to the jury regarding the use of a voice stress analyzer during the abuse investigations. Finally, Appellant challenges the sufficiency of the Common-wealth's evidence to convict her of criminal conspiracy in the murder of her ex-hus-band. We hold the social worker's testi-mony was properly admitted at trial; the court had no duty to give a cautionary jury instruction, absent a specific request from Appellant; and the Commonwealth's evi-dence was sufficient to sustain Appellant's conviction for criminal conspiracy. Ac-cordingly, we affirm.

¶ 2 The relevant facts and procedural history of the case are as follows. Appel-lant and Husband had one child ("Son") and lived in Baltimore, Maryland during their marriage. After separating, Appel-lant made several attempts to disrupt court-ordered custody arrangements by lodging multiple complaints against Hus-band with the Baltimore City Department of Social Services ("DSS"). Appellant al-leged Husband was sexually molesting Son during authorized visits. DSS investiga-tors could not substantiate Appellant's claims by evidence available or found no evidence existed to support the allegations. On January 17, 2003, Husband filed a mo-tion for sole legal and physical custody of Son, which the court in Baltimore granted on July 7, 2003.

¶ 3 Appellant and her mother ("Moth-er") began plotting the murder of Hus-band. Appellant's desire to have Husband killed was apparently motivated by her

---

**1.** 18 Pa.C.S.A. § 2502(a).

**2.** 18 Pa.C.S.A. § 903.

anger over their custody battle and her impending loss of control over Son. Appellant and Mother solicited three successive individuals, Robert Atkinson, Victor Tyrell, and James Gilmore, to carry out the murder on Appellant's behalf. Appellant and Mother told each of them about the alleged sexual abuse, and that they wanted Husband killed to prevent him from gaining custody of Son. They indicated Appellant was desperate to the point she might hurt herself and/or her children if Husband was not killed. At various times, Appellant and Mother provided cash, bail money, intimate relationships, room and board, and other favors in exchange for the anticipated assistance. All three men led Appellant to believe they would assist her, but none of them brought the plan to fruition.

¶ 4 Appellant and Mother then approached Terry Wingler ("Wingler") to kill Husband. Wingler and Appellant had a daughter from a brief earlier relationship. Wingler believed Husband was sexually abusing Son, and that Appellant might hurt herself and/or the children over the custody battle. Wingler agreed to do the killing, apparently driven by his feelings for Appellant and concern for the children. Wingler expressed no independent, personal desire to kill Husband. In fact, they had been childhood friends.

¶ 5 Appellant and Mother coordinated the details of the killing and relayed them to Wingler. Appellant helped arrange for Wingler to pick up his gun, which Appellant's uncle had been storing in his home in Virginia. Appellant drove Wingler from Maryland to Husband's auto body shop in Pennsylvania to familiarize Wingler with the area. Mother provided Wingler with a box of bullets for the gun. Appellant rented a gold-colored car for Wingler so his own vehicle would not be recognized.

¶ 6 On the eve of the killing, Appellant and Wingler stayed in a Baltimore motel with the children. On August 6, 2002, Wingler left the motel early in the morning with a .32 caliber semiautomatic gun, ski mask, gloves and a sweater, and drove to Pennsylvania in the rental car for the sole purpose of killing Husband. Around 2:00 p.m., he parked in front of Husband's auto shop. Wingler approached Husband, as he worked on a car, and shot him seven times with the .32 caliber semiautomatic gun. Husband's girlfriend heard the shots and ran to help him. Husband died at the scene from fatal gunshot wounds to the torso. A witness from across the street also heard the shots and observed the shooter, wearing a ski mask, enter the gold-colored vehicle. After the shooting, Wingler disposed of the weapon, ski mask, gloves, and sweater in a wooded area near the auto shop. Wingler killed Husband just a few days before Husband was to gain full custody of Son.

¶ 7 Wingler maintained contact with Appellant both before and after killing Husband, when he told Appellant "the job" was done. Wingler drove back to Baltimore and arranged to meet Appellant so she could return the rental car. Wingler then drove to a Baltimore hospital to receive care for an injured back. Appellant, Mother, and the children met Wingler at the hospital and proceeded to a Bob Evans restaurant. There, officers from the Baltimore City Police Department approached the group and asked to speak with them. Appellant, Mother, Wingler, and the children accompanied the detectives to the Baltimore City Homicide Unit.

¶ 8 Appellant, Mother and Wingler were subsequently arrested and charged with the murder.[3] Wingler ultimately confessed to killing Husband, and entered a plea

---

3. Mother died prior to trial.

agreement by which he pled guilty to third-degree murder and criminal conspiracy to commit first-degree murder in exchange for his testimony at Appellant's trial. Commonwealth witnesses also included the individuals who heard the shots fired, the individuals Appellant had originally solicited for the killing, the DSS social worker, and the police officer who had investigated the sex abuse allegations. The Commonwealth also presented detailed testimony from a Sprint witness as to length of the cellular phone calls between Appellant and Wingler on the date of the killing as well as the cell tower locations. On August 31, 2004, the jury convicted Appellant of first-degree murder and criminal conspiracy to commit first-degree murder. On October 15, 2004, the court sentenced Appellant to life imprisonment without parole. This appeal and a timely-filed Rule 1925(b) concise statement followed.

¶ 9 On appeal, Appellant raises three issues for our review:

> WHETHER [THE] TRIAL COURT ABUSED ITS DISCRETION WHEN IT PERMITTED TESTIMONY ... AS TO RECORDS THAT WERE NOT PROPERLY AUTHENTICATED AND THEREFORE CONSTITUTED IMPERMISSIBLE HEARSAY?

> WHETHER THE TRIAL COURT ERRED IN NOT ISSUING A CAUTIONARY INSTRUCTION WHEN [A] DETECTIVE MADE MENTION OF A VOICE–STRESS ANALYZER AND POLYGRAPH DURING HIS TESTIMONY?

> WHETHER THE TRIAL COURT ERRED WHEN IT DETERMINED THAT THE COMMONWEALTH PROVED SUFFICIENT EVIDENCE THAT APPELLANT ACTED AS

BOTH AN ACCOMPLICE TO MURDER AND AS A CONSPIRATOR?

(Appellant's Brief at 4).

■ ¶ 10 In her first issue, Appellant challenges the admission of testimony by Cutina Bethel, a DSS social worker, relating to DSS records of three child-abuse investigations. Appellant concedes Ms. Bethel was qualified to testify about those investigative documents that she had prepared or about her own observations of and contacts with Appellant. Appellant avers the DSS records, although kept under seal by a public agency, did not qualify as self-authenticating public records under seal, pursuant to Pa.R.E. 902(1), because the DSS records were confidential and not subject to public scrutiny. Thus, Appellant claims the court erred when it allowed Ms. Bethel to authenticate records for which she was not the custodian, and to testify as to facts contained in certain documents she did not author and were not within her personal knowledge. Appellant relies on *In re Wildoner*, 268 Pa.Super. 271, 407 A.2d 1351 (1979) to support her contention that Ms. Bethel should not have been permitted to testify about the DSS report generated prior to her employment with DSS. Appellant also asks us to adopt the *Wildoner* court's reasoning that investigative reports are inadmissible as self-authenticating business records due to the subjective nature of the observations contained in the reports, where the author of the reports is inexplicably unavailable to testify.

¶ 11 Appellant contends the Commonwealth used the DSS records from the three investigations for a dual purpose: to provide a motive for Husband's murder and to support the Commonwealth's theory that Appellant filed untrue allegations of child sexual abuse to interfere with Husband's custody rights to Son. Appellant maintains the Commonwealth failed to ex-

plain why the author of the first DSS report was unavailable to testify. Appellant asserts the reliability of the first DSS report could not be tested through proper cross-examination. Appellant concludes the trial court committed reversible error when it allowed Ms. Bethel's testimony regarding the DSS report she had not authored.

¶ 12 In response, the Commonwealth argues it laid the proper foundation for Ms. Bethel's testimony relating to the manner in which DSS kept its records and as to her familiarity with the DSS documents. The Commonwealth avers Ms. Bethel explained in detail how DSS generated and maintained records in the ordinary course of its child abuse investigations. The Commonwealth submits Ms. Bethel had personal knowledge of the content of the prior DSS report, which she had reviewed during the course of her own investigations of Appellant's sex-abuse allegations.

¶ 13 The Commonwealth also asserts the DSS records were self-authenticating documents pursuant to Pa.R.E. 902(11) through the letter which certified that DSS generated and maintained the records in the ordinary course of its business. The Commonwealth maintains this certification obviated the need for the custodian of records to appear at trial.

¶ 14 The Commonwealth further maintains Appellant failed to raise a timely and specific Confrontation Clause objection to Ms. Bethel's testimony regarding the DSS report she did not author.

¶ 15 Finally, the Commonwealth contends any error in admitting Ms. Bethel's testimony about the prior report was harmless, in light of Ms. Bethel's testimony regarding the reports she wrote during her own DSS investigations, the independent statements Appellant had made to police about her custody dispute including allegations of Husband's sexual abuse of Son, and the overwhelming otherwise competent evidence introduced against Appellant at trial. The Commonwealth concludes Appellant's issue merits no relief. We agree.

■■■ ¶ 16 The following standard governs our review of the admissibility of evidence:

Admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion. Admissibility depends on relevance and probative value. Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact.

Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due consideration. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.

*Commonwealth v. Levanduski*, 907 A.2d 3, 13–14 (Pa.Super.2006) (en banc) (internal citations omitted).

¶ 17 Pennsylvania Rule of Evidence 803(6) as amended in 2001 provides an exception to the hearsay rule for business records as follows:

**Rule 803. Hearsay exceptions; availability of declarant immaterial**

The following statements, as hereinafter defined, are not excluded by the hearsay rule, even though the declarant is available as a witness:

* * *

**(6) Records of Regularly Conducted Activity.** A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with Rule 902(11), Rule 902(12), or a statute permitting certification, **unless the sources of information or other circumstances indicate lack of trustworthiness.** The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

*Comment:* Pa.R.E. 803(6) is similar to F.R.E. 803(6), but with two differences. One difference is that Pa.R.E. 803(6) does not include opinions and diagnoses. This is consistent with prior Pennsylvania case law. *See Williams v. McClain,* 513 Pa. 300, 520 A.2d 1374 (1987); *Commonwealth v. DiGiacomo,* 463 Pa. 449, 345 A.2d 605 (1975). The second difference is that Pa.R.E. 803(6) allows the court to exclude business records that would otherwise qualify for exception to the hearsay rule if the "sources of information or other circumstances indicate lack of trustworthiness." . . .

Rule 803(6) was amended in 2001 consistent with the December 1, 2000 amendments to F.R.E. 803(6) that permit records of regularly conducted activity to be **authenticated by certification.** This amendment is designed to save the expense and time consumption caused by calling needless foundation witnesses. The notice requirements provided in Pa. R.E. 902(11) and (12) will give other parties a full opportunity to test the adequacy of the foundation.

If offered against a defendant in a criminal case, an entry in a business record may be excluded if its admission would violate the defendant's constitutional right to confront the witnesses against him or her. *See Commonwealth v. McCloud,* 457 Pa. 310, 322 A.2d 653 (1974).

Pa.R.E. 803(6) differs only slightly from 42 Pa.C.S. 6108, which provides:

(a) Short title of section. This section shall be known and may be cited as the "Uniform Business Records as Evidence Act."

(b) General Rule. A record of an act, condition or event shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the tribunal, the sources of information, method and time of preparation were such as to justify its admission.

(c) Definition. As used in this section "business" includes every kind of business, profession, occupation, calling, or operation of institutions whether carried on for profit or not.

Pa.R.E. 803(6) refers to "data compilation" and includes a record "in any form." This language encompasses computerized data storage.

Pa.R.E. 803(6) expressly includes an association in the definition of a business. Pa.R.E. 803(6) places the burden on an opposing party to show that the sources of information or other circumstances indicate that a business record is un-

trustworthy, and thus does not qualify for exception to the hearsay rule. The statute places the burden on the proponent of the evidence to show circumstantial trustworthiness.

Pa.R.E. 803(6) permits records of regularly conducted activity to be authenticated by certification.

Pa.R.E. 803(6) (emphasis in text added).

¶ 18 Further, Pa.R.E. 902 states in pertinent part:

### Rule 902. Self-authentication

Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following:

* * *

**(11) Certified domestic records of regularly conducted activity.** The original or a duplicate of a domestic record of regularly conducted activity that would be admissible under Rule 803(6) if accompanied by a written declaration of its custodian or other qualified person, verified as provided in Pa.R.C.P. 76, certifying that the record—

(A) was made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters;

(B) was kept in the course of the regularly conducted activity; and

(C) was made by the regularly conducted activity as a regular practice.

A party intending to offer a record into evidence under this paragraph must provide written notice of that intention to all adverse parties, and must make the record and declaration available for inspection sufficiently in advance of their offer into evidence to provide an adverse party with a fair opportunity to challenge them.

* * *

*Comment:* ... The addition of paragraph[ ](11) ... is intended to implement the amendment of Pa.R.E. 803(6). Pa.R.E. 902(11). Thus, Rule 803(6) and Rule 902(11) permit records of regularly conducted activity to be authenticated by certification. *Id.*

■ ¶ 19 In a criminal case, the court may exclude business records that might otherwise qualify under these rules, if the Commonwealth uses the records to prove an element of the crime in contravention of the defendant's right of confrontation. *McCloud, supra* (holding Commonwealth's use of substantial portions of medical examiner's written report to prove causation in murder case, where medical examiner was not called to testify, violated defendant's constitutional right to confront witness and constituted reversible error). *Compare Commonwealth v. Twitty,* 876 A.2d 433 (Pa.Super.2005), appeal denied, 586 Pa. 749, 892 A.2d 823 (2005) (deeming inadmissible as business record expert testimony of laboratory manager concerning contents of DNA reports prepared by police crime lab technicians who did not testify, but holding admission constituted harmless error, given overwhelming evidence of guilt).

¶ 20 The court may also exclude business records that would otherwise qualify under Rule 803(6) if the "sources of information or other circumstances indicate lack of trustworthiness." Pa.R.E. 803(6) Comment. *See, e.g., Commonwealth v. Carter,* 861 A.2d 957 (Pa.Super.2004) *(en banc), appeal granted,* 583 Pa. 678, 877 A.2d 459 (2005) (holding crime lab report establishing presence of cocaine was not admissible under business records exception, where lab manager who testified about crime lab report prepared in anticipation of litigation did not have close con-

nection to actual testing; and report, which was sole evidence of record establishing element of crime, included opinion of technician who performed test).

¶ 21 Instantly, the Commonwealth qualified Ms. Bethel as a witness regarding the DSS reports. The court properly allowed her testimony under the business records exception, based on the following: (1) Ms. Bethel's personal knowledge of the general manner of preparation, use, storage, and source of information for case files generated by DSS during the normal course of a child-abuse investigation, including the roles of individuals, teams and departments who conducted the investigations; (2) Ms. Bethel's adherence to DSS protocol by personally reviewing and relying upon the contents of past records during her official investigation of Appellant's sex-abuse allegations; (3) the DSS reports were prepared contemporaneously with the investigations; (4) the DSS records were not prepared for the purpose of Appellant's murder trial; (5) the content of the DSS records were offered to suggest a possible motive for Husband's murder, which is not an element of the crime, and to reflect Appellant's course of prior conduct toward Husband; and (6) the reports were not offered for the truth of the allegations asserted in the reports but only to show when and how Appellant had made the accusations.

¶ 22 Based on our review of the record in light of the applicable law, we see no error in the court's decision to allow Ms. Bethel's testimony regarding the DSS file she referenced as well as the reports she authored during her investigations of Appellant's sex-abuse allegations. The written declaration by the custodian of records certified the DSS reports were generated in the course of regularly conducted activity, which obviated the need for the custodian of records to testify in person. *See*

Pa.R.E. 803(6), Comment; 902(11). Moreover, Ms. Bethel had personal knowledge of the allegations contained in the prior report, as she had utilized that report in her own investigation and testified extensively on DSS protocol as to preparation, storage, and management of files in a child-abuse investigation. *See* Pa.R.E. 803(6).

¶ 23 Ms. Bethel's testimony regarding the prior DSS report prepared by another investigative social worker was confined to the allegations contained in the report and the outcome of the investigation. Her testimony did not include the previous social worker's subjective observations. *See Carter, supra; Wildoner, supra.* Further, none of the DSS reports was prepared for trial against Appellant or to prove an element of the crimes charged against Appellant. *See McCloud, supra.*

■ ¶ 24 Additionally, Appellant failed to object at trial on the specific ground that the testimony violated her "right to confront" the social worker who had authored the prior DSS report. Therefore, we deem this particular challenge waived. Pa.R.A.P. 302(a) (stating: "Issues not raised in the [trial] court are waived and cannot be raised for the first time on appeal"); *Commonwealth v. Duffy*, 832 A.2d 1132 (Pa.Super.2003), *appeal denied*, 577 Pa. 694, 845 A.2d 816 (2004) (holding party must make timely and specific objection at trial to preserve issue for appellate review).

■ ¶ 25 Moreover, the harmless error doctrine reflects the reality that the accused is entitled to a fair trial, not a perfect trial. *Commonwealth v. Passmore*, 857 A.2d 697, 710 (Pa.Super.2004), *appeal denied*, 582 Pa. 673, 868 A.2d 1199 (2005). An error is harmless "where the uncontradicted evidence of guilt is overwhelming, so that by comparison the error is insignificant." *Twitty, supra* at 437.

The Commonwealth satisfies its burden to establish the harmlessness of an error by showing that: "(1) the error did not prejudice the defendant or the prejudice was *de minimus;* **or** (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; **or** (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error so insignificant by comparison that the error could not have contributed to the verdict.

*Levanduski, supra* at 21 (emphasis added).

¶ 26 Here, Ms. Bethel's testimony about her own investigations and reports demonstrated Appellant's repeated allegations against Husband. The police officer assigned to Ms. Bethel's investigations also testified regarding allegations Appellant made to him, which were similar to those contained in the DSS reports that Ms. Bethel had authored. Therefore, evidence of the earlier investigation/report was merely cumulative of other properly admitted evidence. *See id.* Overwhelming independent competent evidence presented at trial linked Appellant to her Husband's murder. *See id.; Twitty, supra.* Thus, we conclude Appellant's first issue merits no relief.

■ ¶ 27 In her second issue, Appellant argues Detective Oakes' testimony regarding the use of a voice stress analyzer during his criminal investigations of Appellant's child sexual abuse allegations against Husband necessitated a cautionary instruction to the jury. Specifically, Appellant complains that, without the instruction, the jury was allowed to infer Appellant's guilt from the fact that she was bringing "false" charges against Husband in her efforts to deny Husband custody of Son. Appellant concedes defense counsel

did not object to the testimony. Nevertheless, Appellant contends the court had an affirmative duty to correct the errant testimony with a cautionary instruction. Appellant asserts the court should have at least asked Appellant if she wanted a cautionary instruction. Appellant concludes the court's omission of a cautionary instruction warrants a new trial. We disagree.

■ ¶ 28 A defendant must make a timely and specific objection at trial or face waiver of her issue on appeal. Pa.R.A.P. 302(a); *Duffy, supra.* "Failure to request a cautionary instruction upon the introduction of evidence constitutes a waiver of a claim of trial court error in failing to issue a cautionary instruction." *Commonwealth v. Bryant,* 579 Pa. 119, 141, 855 A.2d 726, 739 (2004) (citing *Commonwealth v. Wallace,* 522 Pa. 297, 561 A.2d 719 (1989) (holding trial counsel's failure to object, when trial court did not issue cautionary instruction following introduction of evidence of defendant's prior incarceration, resulted in waiver of any claim of error based upon trial court's failure to give cautionary instruction); *Commonwealth v. Jones,* 501 Pa. 162, 460 A.2d 739 (1983) (deeming issue waived where defense counsel immediately objected to prosecutor's conduct but failed to request mistrial or curative instructions)).

¶ 29 Instantly, defense counsel made no objection to Detective Oakes' testimony regarding the voice stress analyzer. (*See* N.T. Trial, 8/23/04, at 541; R.R. 535A). Appellant did not request a jury instruction regarding the voice stress analyzer or object to the trial court's failure to give a cautionary instruction. Moreover, on cross-examination defense counsel specifically questioned Detective Oakes about the test. (*See id.* at 547; R.R. 541A). Consequently, we deem this allegation of trial

court error waived on appeal. *See Bryant, supra; Duffy, supra;* Pa.R.A.P. 302(a).

¶ 30 In her third issue, Appellant argues the evidence presented at trial did not support Appellant's accomplice liability in Husband's murder, because the Commonwealth did not prove Appellant intended to aid or promote Wingler's act of killing Husband. Appellant contends her statement to Wingler that she wanted Husband killed or the fact that she showed Wingler the way to Husband's place of business or the fact that she rented the car Wingler subsequently drove to Pennsylvania to commit the murder did not sufficiently implicate her as an accomplice to Wingler's actions. Appellant also maintains the Commonwealth failed to prove she and Wingler had conspired to kill Husband. Appellant asserts the evidence at trial showed, at most, that she was aware of Wingler's plan. Appellant concludes the Commonwealth's failure to implicate her in a conspiratorial agreement to commit the murder should result in dismissal of the conspiracy charges against Appellant. We disagree.

■ ¶ 31 A challenge to the sufficiency of the evidence implicates the following principles:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the [above test], we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder

unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Mack,* 850 A.2d 690, 693 (Pa.Super.2004) (quoting *Commonwealth v. DiStefano,* 782 A.2d 574, 582 (Pa.Super.2001), appeal denied, 569 Pa. 716, 806 A.2d 858 (2002)).

■ ¶ 32 The Pennsylvania Crimes Code defines first-degree murder as follows:

§ 2502. **Murder**

(a) **Murder of the first degree.**—A criminal homicide constitutes murder of the first degree when it is committed by an intentional killing.

18 Pa.C.S.A. § 2502(a). "To find a defendant guilty of first-degree murder a jury must find that the Commonwealth has proven that he or she unlawfully killed a human being and did so in an intentional, deliberate and premeditated manner." *Commonwealth v. Sattazahn,* 563 Pa. 533, 540, 763 A.2d 359, 363 (2000), *judgment aff'd,* 537 U.S. 101, 123 S.Ct. 732, 154 L.Ed.2d 588 (2003).

It is the element of a willful, premeditated and deliberate intent to kill that distinguishes first-degree murder from all other criminal homicide. Specific intent to kill may be inferred from the defendant's use of a deadly weapon upon a vital [part] of the victim's body.

*Id.* at 540–41, 763 A.2d at 363 (internal citations omitted). The mens rea required for first-degree murder, specific intent to kill, may be established solely from circumstantial evidence. *Commonwealth v. Holbrook,* 427 Pa.Super. 387, 629 A.2d 154 (1993), appeal denied, 536 Pa. 620, 637 A.2d 280 (1993).

 ¶ 33 The Crimes Code defines criminal conspiracy as follows:

### § 903. Criminal conspiracy

**(a) Definition of conspiracy.**—A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

> (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

> (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

\* \* \*

**(e) Overt act.**—No person may be convicted of conspiracy to commit a crime unless an overt act in [pursuit] of such conspiracy is alleged and proved to have been done by him or by a person with whom he conspired.

18 Pa.C.S.A. § 903(a), (e).

Circumstantial evidence may provide proof of the conspiracy. The conduct of the parties and the circumstances surrounding such conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt.

\* \* \*

An agreement can be inferred from a variety of circumstances including, but not limited to, the relation between the parties, knowledge of and participation in the crime, and the circumstances and conduct of the parties surrounding the criminal episode. These factors may coalesce to establish a conspiratorial agreement beyond a reasonable doubt where one factor alone might fail.

*Commonwealth v. Jones,* 874 A.2d 108, 121–22 (Pa.Super.2005) (internal citations and quotation marks omitted). The overt act in furtherance of the conspiracy need not have been committed by the defendant. *Commonwealth v. Finn,* 344 Pa.Super. 571, 496 A.2d 1254 (1985). An overt act committed by any co-conspirator in furtherance of the conspiracy will satisfy the overt act requirement in the case against the defendant. *Id.*

¶ 34 Additionally, the Crimes Code sets forth accomplice liability as follows:

### § 306. Liability for conduct of another; complicity

**(a) General rule.**—A person is guilty of an offense if it is committed by his own conduct or by the conduct of another person for which he is legally accountable, or both.

**(b) Conduct of another.**—A person is legally accountable for the conduct of another person when:

\* \* \*

> (3) he is an accomplice of such other person in the commission of the offense.

**(c) Accomplice defined.**—A person is an accomplice of another person in the commission of an offense if:

> (1) with the intent of promoting or facilitating the commission of the offense, he:

> > (i) solicits such other person to commit it; or

> > (ii) aids or agrees or attempts to aid such other person in planning or committing it; or

(2) his conduct is expressly declared by law to establish his complicity.

18 Pa.C.S.A. § 306.

¶ 35 "[T]wo prongs must be satisfied for a defendant to be found guilty as an 'accomplice.' " *Commonwealth v. Murphy*, 577 Pa. 275, 844 A.2d 1228 (2004).

First, there must be evidence that the defendant intended to aid or promote the underlying offense. Second, there must be evidence that the defendant actively participated in the crime by soliciting, aiding, or agreeing to aid the principal. While these two requirements may be established by circumstantial evidence, a defendant cannot be an accomplice simply based on evidence that he knew about the crime or was present at the crime scene. There must be some additional evidence that the defendant intended to aid in the commission of the underlying crime, and then did or attempted to do so. With regard to the amount of aid, it need not be substantial so long as it was offered to the principal to assist him in committing or attempting to commit the crime.

*Id.* at 286, 844 A.2d at 1234 (internal citations omitted).

¶ 36 Instantly, the trial court concluded that ample evidence supported Appellant's convictions as an accomplice and co-conspirator in Husband's murder:

The fact that the principal, Terry Wingler, who fired the fatal shots into Husband was convicted of murder of the third degree does not bar the conviction of Appellant, as an accomplice, for murder of the first degree. An accomplice is equally criminally liable for the acts of another if he acts with the intent of promoting or facilitating the commission of an offense and agrees, aids, or attempts to aid such other person in either planning or committing that offense.

* * *

The Commonwealth's witnesses amply established that Appellant possessed a specific intent to kill [Husband]. Appellant was outspoken about her desire to have [Husband] dead. Appellant facilitated [Husband's] murder by planning the killing, including the time, place and means, and asked several witnesses to help her. Appellant asked Wingler to kill [Husband] and aided Wingler in bringing the killing to fruition. Appellant's action evidenced her role as an accomplice to [Husband's] murder, by helping Wingler obtain a weapon, showing him the location of [Husband's] shop, and providing a rental car. We are more than satisfied that sufficient evidence of record supports that Appellant could be convicted for first-degree murder as an accomplice because of the extent [of] Appellant's involvement in assisting Wingler in effectuating the killing of [Husband].

* * *

The criminal agreement between Appellant and Wingler to kill [Husband] was substantiated at trial by the Commonwealth's witnesses. Appellant asked Wingler to kill [Husband] to which he agreed. Evidence presented at trial established that Appellant was knowledgeable of the manner, date, time and place the killing was to be carried out by Wingler. Appellant maintained contact with Wingler by cellular phone both before and after the killing and coordinated with Wingler to return the rental car Wingler used to drive to Pennsylvania. Appellant's conduct reflected her agreement with Wingler to bring about [Husband's] murder.

To summarize, viewing the record in the light most favorable to the Commonwealth as verdict winner, the evidence presented was sufficient to uphold Ap-

pellant's conviction for first-degree murder on the basis of her role as conspirator and accomplice. Upon review of the record, we are satisfied that the jury properly found Appellant guilty of first-degree murder of [Husband] beyond a reasonable doubt. The facts fully support the jury's determination Appellant fully intended to kill [Husband] and assisted in bringing about his death by agreement with Wingler. The evidence proves Appellant was legally responsible for the commission of the killing. Appellant's argument to the contrary fails. (Trial Court Opinion at 13–15). The record evidence and the applicable law fully support the trial court's determinations. *See Murphy, supra; Sattazahn, supra; Jones, supra; Holbrook, supra; Finn, supra.* For all of the foregoing reasons, we affirm the judgment of sentence.

¶ 37 Judgment of sentence affirmed.