J-A03001-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| APRIL IRENE STORMS | : | |
| | : | |
| Appellant | : | No. 783 MDA 2019 |

Appeal from the Judgment of Sentence Entered March 19, 2019
In the Court of Common Pleas of Cumberland County Criminal Division at
No(s):  CP-21-CR-0001328-2017

BEFORE:  LAZARUS, J., STABILE, J., and DUBOW, J.

MEMORANDUM BY LAZARUS, J.:　　　　　　　　**FILED MARCH 16, 2020**

April Irene Storms appeals from the judgment of sentence, entered in the Court of Common Pleas of Cumberland County, after she entered an open guilty plea to driving under the influence—general impairment,[1] and reckless driving.[2]  Upon careful review, we affirm.

Storms entered the above guilty pleas following an incident in which she allegedly struck a parked car.  On March 19, 2019, following a presentence investigation, the court sentenced Storms to pay the costs of prosecution and a fine of $300, to make restitution in the total amount of $7,967.06, and to undergo a period of probation of six months.  Trial Court Order, 3/19/19, at 1.  Of the total restitution figure ordered, $7,467.06 was to be paid to Erie

---

[1] 75 Pa.C.S.A. § 3802(a)(1).

[2] 75 Pa.C.S.A. § 3736(a).

Insurance, which covered the victim's loss less a $500 deductible. *Id.*; N.T. Hearing on Motion to Amend Restitution, 4/30/19, at 14.

Storms timely filed a motion to modify sentence, titled as a Motion To Amend Restitution, challenging the restitution award. Motion To Amend Restitution, 4/10/19. On April 30, 2019, the Honorable J. Wesley Oler, Jr., held a hearing on Storms' motion. At the hearing, the Commonwealth presented the testimony of Robyn Foster, an appraiser for Erie Insurance Group, which insured the damaged vehicle.

> The testimony of [Foster], whom the court found entirely credible, supplemented by four exhibits, may be summarized [in relevant part] as follows:
>
> [Foster], who had been a licensed appraiser for 20 years, was assigned by Erie to assess the damage to the insured vehicle, a 2007 4-door Ford Fusion SEL [owned by Ronald Yoffee], with an odometer reading of 69,640 miles. She determined that it would cost $10,698.43 to repair the car, and that the value of the vehicle prior to the damage had been $7,967.06.
>
> Given the insured's deductible of $500.00, [Foster's] market valuation report indicated an obligation on the part of Erie to its insured in the amount of $7,467.06. The practice of the company in such cases was to make the required payment in two installments, with the first being approximately 80% of the total due and the second being the balance, paid upon receipt of title.
>
> [Foster's] market valuation report[, or, "appraisal report,"] was dated February 10, 2017, and she did not thereafter receive any indication by the company of an issue as to payment, as would have been the case had her report not been followed. In addition, her access to the claim file by way of her computer revealed that payment had in fact been made by way of checks. She conceded, however, that she had not personally seen the checks; she also conceded that she had no knowledge of any subrogation rights that Erie might have had against any insurance company insuring [Storms].

Trial Court Opinion, 6/20/19, at 2-3.

Storms raised no objection at the hearing regarding Foster's testimony as to: (1) her assessment of Yoffee's loss; (2) Erie's practice of payment to the insured in accordance with her appraisals unless she is notified otherwise; (3) the lack of any such notification in this case; (4) the amount of the policy's deductible; or (5) the fact that the checks Erie issued had cleared. **See** N.T. Hearing on Motion to Amend Restitution, 4/30/19, at 2-15. However, Storms did object to Foster's testimony that Erie paid Yoffee the value of his vehicle on the grounds that she lacked personal knowledge of the amount paid. **Id.** at 5.

Foster subsequently testified that she could access that information from Erie's claim files on her computer, which thereupon revealed that Erie paid Yoffee in accordance with her report and Erie's routine practices: "it says [Erie] issued a check for $6,476.06 . . . and then there was a second check for $1,000." **Id.** at 6-8. She reiterated that Erie "go[es] off of [her] report[s]" and issues checks to the insured in the amount of the "value . . . less the deductible" in two installments, the first for 80% of the total owed and the second for the remainder. **Id.** The trial court thus overruled Storms' objection and declined to amend the restitution order. **Id.** at 8, 17.

On May 13, 2019, Storms timely filed a notice of appeal to this court. Both Storms and the trial court complied with Pa.R.A.P. 1925. On appeal, Storms raises the following issues for our review:

1. Did the lower court abuse its discretion in admitting [Foster's testimony] regarding the amount paid by Erie Insurance to the victim, Ronald Yoffee, as that testimony was inadmissible hearsay?

2. Did the lower court abuse its discretion in admitting [Foster's testimony] regarding the amount paid by Erie Insurance to [Yoffee] as [Foster] lacked personal knowledge of the amount paid?

3. Did the lower court abuse its discretion in admitting [Foster's testimony] regarding the amount paid by Erie Insurance to [Yoffee] as that testimony was based upon documentation that was not properly authenticated?

4. Was the amount of restitution ordered speculative and unsupported by the record?

Brief of Appellant, at 7.

Storms' first three claims relate to the court's ruling on the admissibility of Foster's testimony. Evidentiary rulings are within the sound discretion of the trial court. *Commonwealth v. Bond*, 190 A.3d 664, 667 (Pa. Super. 2018). "[A]n appellate court may reverse a trial court's ruling on the admissibility of evidence only upon a showing that the trial court abused its discretion." *Commonwealth v. Minderd*, 753 A.2d 225, 229 (Pa. 2000). "An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, or ill-will." *Commonwealth v. Hess*, 754 A.2d 29, 31 (Pa. Super. 2000). "To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party." *Commonwealth v. Lopez*, 57 A.3d 74, 81 (Pa. Super. 2012).

Storms first claims that Foster's testimony regarding the amount Erie paid to Yoffee was inadmissible hearsay. The Pennsylvania Rules of Evidence provide for several exceptions to the general rule against hearsay. *See* Pa.R.E. 802 (hearsay inadmissible except as provided by statute, Pennsylvania Rules of Evidence, or rules prescribed by Pennsylvania Supreme Court). The trial court admitted Foster's testimony regarding Erie's payment to Yoffee as record of a regularly conducted business activity pursuant to Pa.R.E. 803, which provides, in relevant part, as follows:

> The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:
>
> **(6) Records of a Regularly Conducted Activity.** A record (which includes a memorandum, report, or data compilation in any form) of an act, event or condition if:
>
> (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;
>
> (B) the record was kept in the ordinary course of a regularly conducted activity of a "business," which term includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit;
>
> (C) making the record was a regular practice of that activity;
>
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
>
> (E) the opponent does not show that the source of the information or other circumstances indicate a lack of trustworthiness.

Pa.R.E. 803.

Storms argues that "none of the necessary conditions found at Rule 803(6) for the admission of a business record were met," and that the court, therefore, abused its discretion in admitting Foster's testimony. Brief of Appellant, at 15-18. We disagree.

Foster testified that in her role as Erie's appraiser, she regularly assesses damage to Erie's insured vehicles, determines the amount needed for their repair in an appraisal report, and has access to claim files reflecting Erie's payment on claims in accordance with her reports. N.T. Hearing on Motion to Amend Restitution, 4/30/19, at 2-7. Foster created her appraisal report after personally inspecting Yoffee's vehicle that Storms damaged. *Id.* at 2-3. The Commonwealth qualified Foster as a witness regarding the amount Erie paid Yoffee in that she has personal knowledge of the general manner of preparation, use, storage, and sources of information for Erie's appraisal reports and claim files. *Id.* at 2-8; *see Commonwealth v. Schoff*, 911 A.2d 147, 157 (under these circumstances, witness is qualified witness for purposes of Rule 803(6)).

Crucially, Storms has not demonstrated that Foster's testimony or the source of her information was untrustworthy. On the contrary, "Foster's testimony as to her appraisal, her company's established procedure of payment to its insured in accordance with her report in the absence of a communicated issue, [and] the lack of any such communicated issue" corroborate "the reflection in the claim file of payment in this case." *Id.* at 7-8. Accordingly, the court was "persuaded [that] Erie Insurance Group had in

fact compensated the victim for the loss caused by Storms." *Id.* "As the finder of fact, the trial court was in the best position to determine the trustworthiness of [Erie's] documentary evidence, as well as the credibility and reliability of [Foster's] testimony. We shall not substitute our judgment for the trial court's judgment." *Commonwealth Fin. Sys., Inc. v. Smith*, 15 A.3d 492, 499 (Pa. Super. 2011).

Upon review, we discern no abuse of discretion, as Foster's testimony was admissible under Pa.R.E. 803(6).

Storms next claims that the trial court abused its discretion in admitting Foster's testimony because "she lacked personal knowledge" of the amount that Erie paid to Yoffee. Brief of Appellant, at 19. It is well-settled that "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony." Pa.R.E. 602.

Foster testified that in her capacity as Erie's appraiser, she evaluated the damage to Yoffee's vehicle and created an appraisal report. N.T. Hearing on Motion to Amend Restitution, 4/30/19, at 2-3. She further testified as to Erie's established procedure of paying the insured in accordance with her reports unless some issue is communicated to her, and she explained that in this matter, there was no issue communicated regarding payment to Yoffee. *Id.* at 4-8, 13-14. Thus, the Commonwealth presented sufficient evidence, through Foster's own testimony, to establish her personal knowledge of the

- 7 -

amount paid. ***See Schoff***, ***supra*** at 157 (witness deemed to have personal knowledge of criminal allegations in Department of Social Services (DSS) report where she used that report in a criminal investigation and testified regarding DSS protocol for file preparation, storage, and management).

In her third claim, Storms argues that the lower court abused its discretion by admitting Foster's testimony regarding the amount Erie paid to Yoffee because "the documentation relied upon was not properly authenticated." Brief of Appellant, at 21. "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Pa.R.E. 901(a). "Testimony that an item is what it is claimed to be" is sufficient. Pa.R.E. 901(b)(1).

Here, Foster testified that the document accessed and referenced at trial was a claim file reflecting Erie's payment of $7,467.06 to Yoffee though two separately issued checks. N.T. Hearing on Motion to Amend Restitution, 4/30/19, at 4-7. As noted above, Foster testified that she regularly has access to these claim files in her capacity as Erie's appraiser. Therefore, Foster properly authenticated the documentation reflecting Erie's payment, and the trial court did not abuse its discretion in admitting her testimony regarding the amount paid. ***See*** Pa.R.E. 901(b)(1).

Lastly, Storms claims that the amount of restitution ordered is speculative and unsupported by the record. Specifically, Storms argues that "the evidence relied upon by the court in reaching its decision was improperly

admitted," and "[w]ithout the improperly admitted evidence, the amount ordered is speculative and unsupported by the record." Brief of Appellant, at 23.

In Pennsylvania,

when a victim suffers injury to person or property, a sentencing court is mandated under § 1106(a) to enter an order of restitution for the loss or damage directly resulting from the crime. 18 Pa.C.S. § 1106(a). Section 1106(a) provides:

General rule.—Upon conviction for any crime wherein property has been stolen, converted or otherwise unlawfully obtained, or its value substantially decreased as a direct result of the crime . . . the offender shall be sentenced to make restitution in addition to the punishment prescribed therefor.

*Commonwealth v. Weir*, 201 A.3d 163, 170 (Pa. Super. 2018). A restitution order "must be supported by the record and may not be speculative." *Id.* at 171. "The court shall not reduce a restitution award by any amount that the victim has received from an insurance company but shall order the defendant to pay any restitution ordered for loss previously compensated by an insurance company to the insurance company." 18 Pa.C.S.A. § 1106(c)(1)(i).

Where a challenge to a restitution award is premised upon a claim that the amount ordered is excessive, it involves a challenge to the discretionary aspect of sentencing.[3] *Weir*, *supra* at 172. An appeal raising the

_____

[3] Conversely, challenges directed to the trial court's authority to impose restitution or to the lack of support in the record concern the legality of the sentence. *Weir*, *supra* at 172; *Commonwealth v. Stradley*, 50 A.3d 769 (Pa. Super. 2012).

discretionary aspects of sentencing is not guaranteed as of right; rather, it is considered a petition for permission to appeal. ***Commonwealth v. Williams***, 562 A.2d 1385, 1386-87 (Pa. Super. 1989) (en banc). In order to reach the merits of a discretionary aspects claim, we must engage in a four-part analysis to determine:

> (1) whether appellant has filed a timely notice of appeal, ***see*** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, ***see*** Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

> * * *

> The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.

***Commonwealth v. Griffin***, 65 A.3d 932, 935-36 (Pa. Super. 2013) (some citations and quotations omitted).

Here, Storms filed a post-sentence motion to modify her sentence, a timely notice of appeal, and included in her brief a concise statement of reasons relied upon for appeal pursuant to Rule 2119(f). Specifically, Storms argues that the evidence relied on in setting the restitution order was improperly admitted, and without that evidence, the amount ordered is

speculative and unsupported by the record.[4]  Brief of Appellant, at 23.  Storms raises a substantial question by asserting that her sentence of restitution was not supported by the record.  ***Commonwealth v. Walker***, 666 A.2d 301, 310 (Pa. Super. 1995).

As explained above, however, the trial court properly admitted Foster's testimony under Rule 803(6), and her testimony was sufficient to establish the amount that Erie paid Yoffee in connection with Storms' car accident.  ***See*** N.T. Hearing on Motion to Amend Restitution, 4/30/19, at 2-8, 13-14; ***Schoff***, ***supra*** at 157.  The record, therefore, supports the trial court's restitution order.

Judgment of sentence affirmed.

---

[4] Storms notes in her appellate brief that the Commonwealth was unable to establish at trial whether Erie had any subrogation rights that offset its loss. Brief of Appellant, at 25.  "There was no evidence in this case of any insurance on the part of [Storms] that might have been available for reimbursement of Erie pursuant to a subrogation claim, no evidence that [Storms] had made a claim upon any insurer to cover her liability for the criminal conduct, and no evidence that Erie had made a subrogation claim and received reimbursement."  Trial Court Opinion, 6/20/19, at 5 n.27.  We agree with the trial court that "under these circumstances," the Commonwealth was not "required to prove a negative on the issue of reimbursement by way of a subrogation recovery."  ***Id.***

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/16/2020