J-A19029-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| MICHAEL DAVID RICHARDSON | : | |
| | : | |
| Appellant | : | No. 1074 MDA 2021 |

Appeal from the Judgment of Sentence Entered July 13, 2021
In the Court of Common Pleas of Berks County
Criminal Division at No(s):  CP-06-CR-0005335-2018

BEFORE:   BOWES, J., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KING, J.:                **FILED: NOVEMBER 15, 2022**

Appellant, Michael David Richardson, appeals from the judgment of sentence entered in the Berks County Court of Common Pleas, following his jury trial convictions for three (3) counts of conspiracy, two (2) counts of aggravated assault, and one (1) count each of first-degree murder and stalking.[1]  We affirm.

The trial court opinion set forth the relevant facts of this appeal as follows:

> On the night of July 23, 2018, Julissa Torres was celebrating her birthday at Nick's Cafe at 11th and Chestnut Streets in the City of Reading, Berks County, Pennsylvania.  She and Dawud Felton left the bar at approximately 2:20 a.m. on the

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 903, 2702(a)(1), (4), 2502(a), and 2709.1(a)(1), respectively.

morning of the 24th and walked to her apartment at 338 South 10th Street. Along the way, they encountered Carlos Herrera and a companion of his named Eddie.

Ms. Torres and her friends entered her second-floor apartment, where her three children and their babysitter were also present. Ms. Torres and the others were inside the apartment for five to ten minutes before they heard gunshots outside her door. Ms. Torres testified that she and the others ran upstairs, but she eventually realized that Carlos Herrera was not upstairs with them. Dawud Felton went downstairs to look for Carlos and then called to Ms. Torres. Ms. Torres walked downstairs and found Carlos in the kitchen holding his neck, where he had been struck by a bullet. Carlos Herrera died at the scene and his body was transported to the Reading Hospital by Deputy Coroner Melissa Spuhler. Dr. Neil Hoffman, a forensic pathologist, testified that the cause of death was a gunshot wound to the chest.

Julissa Torres testified that leading up to that night, she had been having problems with [Appellant]. Ms. Torres went to school with [Appellant] and they kept in touch through Facebook. [Appellant's] Facebook account was named "Desperado Hitta," and Ms. Torres's Facebook account was named "Ju Staymentioned." Ms. Torres testified that they communicated on Facebook by sending both written and audio messages. The Commonwealth admitted messages sent between the two accounts from July 12, 2018 to July 28, 2018 into evidence. Many of the messages are threatening in nature.

Ms. Torres also testified that she was in the area of 11th and Cotton Streets one day in July when [Appellant], who was in a car with Jeremy Collazo, pointed a gun out the window at her. Ms. Torres messaged [Appellant] on Facebook on July 21, 2018 asking why he pulled his gun out and [Appellant] replied, "Because I was going to shoot you." [Appellant] further explained that he was going to shoot her because her daughter's father, Robert, shot at him. Ms. Torres testified that Robert shot at [Appellant] in response to [Appellant] shooting at her uncle's house.

Following the murder of Carlos Herrera, Officer Christopher

- 2 -

Bucklin of the Reading Police Department obtained video surveillance footage from Nick's Cafe at 1050 Chestnut Street, from 401 South 9th Street, and from 420 Orange Street in the City of Reading. The video from 401 South 9th Street depicts two males walking north on 9th Street and then east onto Muhlenberg Street near the time of the murder. The video from 420 Orange Street depicts two individuals running along Culvert Street near the time of the murder. The location of the cameras relative to the scene of the homicide is depicted in Commonwealth Exhibit 85. The video from 401 South 9th Street shows that one of the men is wearing a black, hooded sweatshirt with wide, white drawstrings. [Appellant] was wearing a similar sweatshirt when he was taken into custody by the police on July 28, 2018.

Officer Josiah Fisher of the Reading Police Department saw [Appellant] discard a firearm while he was chasing him. Officer Timothy Morris recovered the firearm and a gold cell phone near the location where [Appellant] was apprehended. The Pennsylvania State Police determined that shell casings recovered from the scene of the homicide and from the scene of the shooting at Julissa Torres's uncle's house were fired from the .22 caliber firearm that [Appellant] discarded while being chased by the police prior to his arrest.

(Trial Court Opinion, filed 10/5/21, at 1-3) (internal record citations omitted).

On December 17, 2018, the Commonwealth filed a criminal information charging Appellant with offenses related to the shooting. Appellant proceeded to trial, and a jury found him guilty of first-degree murder and related offenses. On July 13, 2021, the court sentenced Appellant to life imprisonment for the murder conviction. Appellant timely filed a post-sentence motion on July 21, 2021, which included a challenge to the weight of the evidence demonstrating the perpetrator's identity. On July 26, 2021, the court denied Appellant's post-sentence motion.

- 3 -

Appellant timely filed a notice of appeal on August 13, 2021. On August 19, 2021, the court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant timely filed his Rule 1925(b) statement on September 7, 2021.

Appellant now raises one issue for our review:

> Whether the trial court reversibly erred in denying [Appellant's] post-sentence challenge to the weight of the evidence with regard to all charges against him.

(Appellant's Brief at 7).

On appeal, Appellant challenges "the weight of the evidence as it pertains to his identity as one of the two perpetrators of the murder." (*Id.* at 39). Appellant emphasizes that there was no eyewitness testimony placing him at the crime scene, and "the evidence of identification is tenuous, vague and uncertain to such an extent that it should have shocked the conscience of the trial court." (*Id.* at 41). Regarding the trial court's emphasis on the threatening messages Appellant sent to Ms. Torres, Appellant insists that "these supposed threats were communicated in the context of other, non-threatening situations such as needing a ride home from work or asking where a birthday celebration was being held." (*Id.*) Appellant also maintains that he and Ms. Torres "were drug dealers and the way they conducted themselves and communicated about ordinary activities was in itself shocking to people of ordinary sensibilities." (*Id.*)

Additionally, Appellant argues he was not the only person to have issues

with Ms. Torres, and Ms. Torres "continued to be targeted in shootings even after Appellant was arrested and jailed…." (*Id.* at 44). Relying on testimony from Ms. Torres and police witnesses, Appellant posits that an individual named Luis Sanabria was involved with the instant shooting. Appellant claims that Mr. Sanabria: 1) was present when Appellant was arrested; 2) he possessed one of Appellant's cell phones; and 3) Ms. Torres had complained about Mr. Sanabria on prior occasions. Based upon the foregoing, Appellant contends that "the evidence established that the second shooter [acting with Mr. Collazo] could have been Luis Sanabria or any one of the multiple persons entangled in the extended family and business feuds" of Ms. Torres. (*Id.* at 44-45). Appellant concludes that his convictions are against the weight of the evidence, and this Court must vacate his judgment of sentence and remand the matter for a new trial. We disagree.

In reviewing a challenge to the weight of the evidence, our standard of review is as follows:

> The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the…verdict if it is so contrary to the evidence as to shock one's sense of justice.
>
> ***Commonwealth v. Small***, 559 Pa. 423, [435,] 741 A.2d 666, 672-73 (1999). Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably

- 5 -

abused its discretion in ruling on the weight claim.

*Commonwealth v. Champney*, 574 Pa. 435, 444, 832 A.2d 403, 408 (2003), *cert. denied*, 542 U.S. 939, 124 S.Ct. 2906, 159 L.Ed.2d 816 (2004) (most internal citations omitted).

Additionally, the Crimes Code defines the offense of criminal conspiracy as follows:

**§ 903.  Criminal conspiracy**

**(a)   Definition of conspiracy.**—A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

(1)  agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

(2)  agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

\*     \*     \*

**(c) Conspiracy with multiple criminal objectives.**—If a person conspires to commit a number of crimes, he is guilty of only one conspiracy so long as such multiple crimes are the object of the same agreement or continuous conspiratorial relationship.

18 Pa.C.S.A. § 903(a), (c).

"To sustain a conviction for criminal conspiracy, the Commonwealth must establish that the defendant (1) entered into an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared

criminal intent, and (3) an overt act was done in furtherance of the conspiracy." ***Commonwealth v. Melvin,*** 103 A.3d 1, 42 (Pa.Super. 2014) (citation omitted).

> The essence of a criminal conspiracy is a common understanding, no matter how it came into being, that a particular criminal objective be accomplished. Therefore, a conviction for conspiracy requires proof of the existence of a shared criminal intent. An explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities. Thus, a conspiracy may be inferred where it is demonstrated that the relation, conduct, or circumstances of the parties, and the overt acts of the co-conspirators sufficiently prove the formation of a criminal confederation. The conduct of the parties and the circumstances surrounding their conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt.

***Id.*** at 42-43. "Once the trier of fact finds that there was an agreement and the defendant intentionally entered into the agreement, that defendant may be liable for the overt acts committed in furtherance of the conspiracy regardless of which co-conspirator committed the act." ***Commonwealth v. Barnes***, 871 A.2d 812, 820 (Pa.Super. 2005), *aff'd*, 592 Pa. 301, 924 A.2d 1202 (2007).

The Crimes Codes defines aggravated assault in relevant part as follows:

**§ 2702.  Aggravated assault**

   **(a)  Offense defined.—**A person is guilty of aggravated assault if he:

      (1)   attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or

> recklessly under circumstances manifesting extreme indifference to the value of human life;

> \* \* \*

> (4) attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon[.]

18 Pa.C.S.A. § 2702(a)(1), (4).

The Crimes Code defines first-degree murder as follows:

> **§ 2502. Murder**

> **(a) Murder of the first degree.**—A criminal homicide constitutes murder of the first degree when it is committed by an intentional killing.

18 Pa.C.S.A. § 2502(a).

> To find a defendant guilty of first-degree murder a jury must find that the Commonwealth has proven that he or she unlawfully killed a human being and did so in an intentional, deliberate and premeditated manner.

> > It is the element of a willful, premeditated and deliberate intent to kill that distinguishes first-degree murder from all other criminal homicide. …

> The *mens rea* required for first-degree murder, specific intent to kill, may be established solely from circumstantial evidence.

*Commonwealth v. Schoff*, 911 A.2d 147, 159-60 (Pa.Super. 2006) (internal citations and quotation marks omitted). "Specific intent to kill can be established though circumstantial evidence, such as the use of a deadly weapon on a vital part of the victim's body." *Commonwealth v. Montalvo*, 598 Pa. 263, 274, 956 A.2d 926, 932 (2008), *cert denied*, 556 U.S. 1186, 129

S.Ct. 1989, 173 L.Ed.2d 1091 (2009).

Further, the Crimes Code defines stalking as follows:

**§ 2709.1.  Stalking**

**(a)  Offense defined—**A person commits the crime of stalking when the person either:

(1)  engages in a course of conduct or repeatedly commits acts toward another person, including following the person without proper authority, under circumstances which demonstrate either an intent to place such other person in reasonable fear of bodily injury or to cause substantial emotional distress to such other person[.]

18 Pa.C.S.A. § 2709.1(a)(1).

Instantly, the trial court evaluated the evidence and concluded that "[t]here was nothing shocking about the jury's verdict."  (Trial Court Opinion at 6).  On this record, we cannot say that the court palpably abused its discretion in ruling on the weight claim.  ***See Champney, supra***.  Contrary to Appellant's argument, significant evidence linked him to the shooting.  The Commonwealth demonstrated that: 1) Appellant had communicated threats to Ms. Torres in the days before the shooting; 2) surveillance video recorded a suspect near the crime scene at the time of the shooting who was wearing a distinctive sweatshirt that matched the one worn by Appellant at the time of his arrest; and 3) Appellant discarded a firearm during his flight from police, and subsequent testing linked this firearm to the shell casings at the crime scene.  We will not substitute our judgment for that of the jury, and we conclude that Appellant is not entitled to relief on his weight claim.

Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/15/2022