J-S32038-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RUSSELL HILL | : | |
| | : | |
| Appellant | : | No. 3174 EDA 2023 |

Appeal from the Judgment of Sentence Entered September 29, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0001308-2022


BEFORE: LAZARUS, P.J., STABILE, J., and KING, J.

MEMORANDUM BY KING, J.:                    **FILED SEPTEMBER 23, 2024**

Appellant, Russell Hill, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his jury trial convictions for two counts of first-degree murder, and one count each of conspiracy to commit murder, firearms not to be carried without a license, carrying a firearm in public, and possession of an instrument of crime ("PIC").[1] We affirm.

The trial court set forth the relevant facts and procedural history of this case as follows:

> On May 9, 2021, at approximately 4:12 p.m., [Appellant] and his codefendant, D'Angelo Thomas, drove and parked a blue 2019 Nissan Altima on Roosevelt Boulevard around the corner from 147 East Albanus Street, where the decedents, [S.L. (a minor)] and Markel Smith-Rafi, were hanging out on the porch with three other individuals. After getting out

_____

[1] 18 Pa.C.S.A. §§ 2502(b)(1), 903, 6106, 6108, and 907, respectively.

of the vehicle together, [Appellant] and [Mr. Thomas] walked through a parking lot directly towards East Albanus Street. As [Appellant] and [Mr. Thomas] approached 147 East Albanus Street, without provocation or warning, they both pulled out firearms and began shooting at the people on the porch. [Appellant] began shooting from across the street and continued shooting as he walked into the street closer to the porch. [Mr. Thomas] was on the sidewalk closest to 147 East Albanus Street when he began shooting and continued forward until he went up the steps and onto the porch. [Appellant] fired eighteen shots from his 9-millimeter handgun and [Mr. Thomas] fired twelve shots from his 40-caliber handgun for a total of thirty shots fired.

After the shooting began, everyone on the porch attempted to run inside of the house, but the decedents were each unable to make it inside and were shot multiple times. [S.L.] suffered a total of nine gunshot wounds, with three to his torso, two to his right leg, and four to his left leg. Markel Smith-Rafi suffered two gunshot wounds, one to his torso and one to his left forearm. Two other individuals on the porch were also shot, but survived after being transported to the hospital. Ignacio Morales suffered multiple gunshot wounds to his chest, back, buttocks, leg and elbow, while Kyle Louison was shot in the ankle. As [Appellant] and [Mr. Thomas] were shooting, [Mr. Thomas] was also struck by a bullet in the leg.

As soon as they stopped shooting, [Appellant] and [Mr. Thomas] ran back through the parking lot to the blue Nissan Altima and drove away. About ten minutes after the shooting, at approximately 4:24 p.m., [Appellant], [Mr. Thomas], and [Mr.] Thomas' brother, Johnvonte Thomas, arrived at Albert Einstein Medical Center in the Nissan Altima to get [Mr. Thomas] medical treatment for his gunshot wound. Upon being approached and questioned by police, they provided inconsistent statements about where [Mr. Thomas] was shot. After [Mr. Thomas] initially stated that he was shot at 10th Street and Godfrey Avenue, he then stated that he was actually shot a block away at 6301 N. 10th Street. Meanwhile, [Appellant] and Johnvonte Thomas stated that they picked up [Mr. Thomas] at 3rd Street and Duncannon Avenue after he was shot.

The shooting and the events surrounding it were captured by surveillance video. [Appellant's and Mr. Thomas'] statements at the hospital were also captured on video by the body worn cameras of the police officers who were present at the hospital when the defendants arrived. These videos showed that [Appellant] and [Mr. Thomas] were wearing some of the same clothes as the shooters when they arrived at the hospital. [Appellant] was wearing the same black jeans with the same specific rips and the same-colored underwear hanging out of the back of his pants that one of the shooters is seen wearing running away from the shooting. [Mr. Thomas] was wearing the same pants with gray New Balance sneakers and distinctive blue socks with yellow and pink stripes.

[Appellant's] DNA was found on a pair of blue rubber gloves recovered from the backseat of the Nissan Altima that [Appellant] and [Mr. Thomas] arrived in at the hospital following the shooting. A black hooded zipper-down Under Armour jacket was also recovered from the backseat of the vehicle, which had gunshot residue on its left cuff and sleeve. Surveillance video showed that one of the shooters was wearing the same blue gloves and black jacket at the time of the incident.

Twelve .40 caliber fired cartridge casings ("FCCs") and eighteen 9-millimeter FCCs were recovered at the scene. The 9-millimeter FCCs fired by [Appellant] were located on the sidewalk across the street, in the street moving toward 147 East Albanus Street, and on the sidewalk in front of the porch. The .40 caliber FCCs fired by [Mr. Thomas] were located on the porch, steps, and sidewalk in front of 147 East Albanus Street.

(Trial Court Opinion, filed 2/1/24, at 2-4) (internal citations to the record and footnotes omitted). Following investigation, Appellant was identified as a suspect in the homicides, and was arrested after the execution of a search warrant at his residence.

On September 21, 2023, Appellant appeared before a jury for trial. On

September 29, 2023, the jury convicted Appellant of the above-mentioned offenses. That same day, the court sentenced Appellant to an aggregate term of life imprisonment without the possibility of parole.

On October 6, 2023, Appellant timely filed a post-sentence motion, challenging the weight of the evidence. On November 8, 2023, the court denied Appellant's post-sentence motion. Appellant timely filed a notice of appeal on December 8, 2023. On December 12, 2023, the trial court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and Appellant timely complied on January 2, 2024.

On appeal, Appellant presents a single issue for review:

> Did the trial judge err as a matter of law by allowing verdicts of first-degree murder to stand which was against the weight and sufficiency of evidence?

(Appellant's Brief at 7).

Appellant argues that the surveillance footage from before and after the incident was not conclusive to prove beyond a reasonable doubt that Appellant was the second shooter. Appellant asserts that the footage did not show the individual's face or provide a definite picture of the individual's height, weight, or race, or any other identifiable characteristics besides the individual's clothing. Appellant suggests that thousands of other males in Philadelphia wear similar outfits to the man captured on surveillance footage. Appellant also contends that the surveillance footage did not show how many people were in the Nissan Altima or show anyone exiting or entering the vehicle before or after the shooting. Appellant suggests that Johnvonte Thomas could

have been the second shooter. Appellant also maintains that the presence of his DNA on the rubber gloves does not necessarily prove he was the shooter, only that he was in the Altima and touched the gloves.

Additionally, Appellant avers that the Commonwealth failed to prove that Appellant had specific intent to kill. Appellant argues that his co-defendant was the one who approached the porch, and that the other individual fired from 30 to 40 feet away. Appellant suggests that because there was no evidence of close-range firing by the second shooter, there was no intent to cause death or serious bodily injury. Therefore, Appellant suggests that the evidence proved only third-degree murder, and not first-degree murder.

Further, Appellant contends that the jury did not consider possibility that Appellant was not the shooter, and that the surveillance footage was too inconclusive to determine beyond a reasonable doubt that Appellant was the same person on the video. Appellant insists that the jury failed to consider that Appellant may have acted with malice, but not specific intent to kill. Appellant concludes the evidence was insufficient to sustain his first-degree murder convictions and the verdicts were against the weight of the evidence, and this Court must grant relief. We disagree.

Appellate review of a challenge to the sufficiency of the evidence is governed by the following principles:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there

is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Jones***, 874 A.2d 108, 120-21 (Pa.Super. 2005) (quoting

***Commonwealth v. Bullick***, 830 A.2d 998, 1000 (Pa.Super. 2003)). This

Court has further explained:

[E]vidence of identification need not be positive and certain to sustain a conviction. Although common items of clothing and general physical characteristics are usually insufficient to support a conviction, such evidence can be used as other circumstances to establish the identity of a perpetrator. … Given additional evidentiary circumstances, any indefiniteness and uncertainty in the identification testimony goes to its weight.

***Commonwealth v. Orr***, 38 A.3d 868, 874 (Pa.Super. 2011) (*en banc*),

*appeal denied*, 617 Pa. 637, 54 A.3d 348 (2012) (internal citations omitted).

The Crimes Code defines first-degree murder as follows:

**§ 2502. Murder**

**(a) Murder of the first degree.**—A criminal homicide constitutes murder of the first degree when it is committed

by an intentional killing.

18 Pa.C.S.A. § 2502(a).

> To find a defendant guilty of first-degree murder a jury must find that the Commonwealth has proven that he or she unlawfully killed a human being and did so in an intentional, deliberate and premeditated manner.
>
> > It is the element of a willful, premeditated and deliberate intent to kill that distinguishes first-degree murder from all other criminal homicide. …
>
> The *mens rea* required for first-degree murder, specific intent to kill, may be established solely from circumstantial evidence.

*Commonwealth v. Schoff*, 911 A.2d 147, 159-60 (Pa.Super. 2006) (internal citations and quotation marks omitted). "Specific intent to kill can be established though circumstantial evidence, such as the use of a deadly weapon on a vital part of the victim's body." *Commonwealth v. Montalvo*, 598 Pa. 263, 274, 956 A.2d 926, 932 (2008), *cert. denied,* 556 U.S. 1186, 129 S.Ct. 1989, 173 L.Ed.2d 1091 (2009).

Additionally,

> The weight of the evidence is exclusively for the finder of the fact who is free to believe all, part or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the … verdict if it is so contrary to the evidence as to shock one's sense of justice.
>
> *Commonwealth v. Small,* 559 Pa. 423, [435,] 741 A.2d 666, 672-73 (1999). Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably

abused its discretion in ruling on the weight claim.

***Commonwealth v. Champney***, 574 Pa. 435, 444, 832 A.2d 403, 408 (2003), *cert denied,* 542 U.S. 939, 124 S.Ct. 2906, 159 L.Ed.2d 816 (2004) (most internal citations omitted).

Instantly, the trial court addressed Appellant's sufficiency claim as follows:

> In this case, the evidence was more than sufficient to sustain [Appellant's] convictions for First-Degree Murder. [Appellant and Mr. Thomas] drove to the area of East Albanus Street with the specific intent of shooting and killing the decedents. They deliberately sought out the decedents and the surviving victims in order to shoot them. Both [Appellant and Mr. Thomas] pulled out their firearms across the street and began firing without any warning. [Appellant and Mr. Thomas] fired a total of forty shots at the unsuspecting victims, who were trapped on the porch with nowhere to run. [Appellant and Mr. Thomas] both moved closer to the porch as they shot until they were merely feet away from the decedents to ensure that they were hitting their intended targets. [Appellant] acted with the specific intent to kill by using a deadly weapon on a vital part of the decedents' bodies by aiming his gun at the decedents and firing multiple shots while the decedents attempted to get away.
>
> The surveillance video of the shooting, the body worn camera footage from the hospital, and the forensic evidence clearly established that [Appellant] was one of the shooters. [Appellant] was wearing the same clothes at the hospital as one of the shooters on video. [Appellant's] DNA was found in the pair of blue gloves recovered from the backseat of the Nissan Altima, and gunshot residue was found on the black jacket recovered next to the gloves.

(Trial Court Opinion, filed 2/1/24, at 5-6).

The record supports the court's analysis. Viewed in the light most favorable to the Commonwealth as verdict-winner, the Commonwealth

- 8 -

presented sufficient evidence to identify Appellant as the second shooter. *See*

*Orr, supra*. Any indefiniteness and uncertainty regarding the identification

evidence challenges its weight, not its sufficiency. *See id.* Further, the trial

court aptly summarized the evidence supporting Appellant's specific intent to

kill, which included the firing of a total of 40 shots at vital parts of the

decedents' bodies.[2] *See Montalvo, supra*; *Schoff, supra*. Therefore, the

evidence was sufficient to support Appellant's convictions for first-degree

murder. *See Jones, supra*.

Regarding Appellant's weight challenge, the trial court stated:

> The jury's verdict is not so contrary to the evidence as to
> shock one's sense of justice. The evidence of [Appellant's]
> guilt was overwhelming. As discussed above, the evidence
> established that [Appellant and Mr. Thomas] parked around
> the corner, walked up to the porch where the decedents and
> several others were located, and began firing multiple shots
> at the group. As the victims attempted to run into the house
> with nowhere else to go, [Appellant and Mr. Thomas]
> continued to shoot their firearms and struck and killed both
> decedents. Minutes after the shooting, [Appellant and Mr.
> Thomas] went to the hospital wearing the same clothes as
> the shooters and lied about where [Mr. Thomas] was shot.
> It is clear from [Appellant's] actions that he formed the
> specific intent to kill the decedents.

_____

[2] Dr. Lindsey Simon, assistant City Medical Examiner, testified regarding the injuries that both decedents sustained. (*See* N.T. Trial, 9/27/23, at 68-91). S.L. suffered nine gunshot wounds, including to the torso and chest cavity; Markel Smith-Rafi was shot twice, including a bullet that entered his chest cavity. (*See id.*) *See also Commonwealth v. Sepulveda*, 579 Pa. 217, 226-27, 855 A.2d 783, 789 (2004), *cert. denied*, 546 U.S. 1169, 126 S.Ct. 1330, 164 L.Ed.2d 47 (2006) (stating abdomen is vital part of body); *Commonwealth v. Drumheller*, 570 Pa. 117, 142-43, 808 A.2d 893, 908 (2002), *cert. denied*, 539 U.S. 919, 123 S.Ct. 2284, 156 L.Ed.2d 137 (2003) (stating torso may be considered vital part of body).

(Trial Court Opinion at 6-7). On this record, we cannot say that the trial court palpably abused its discretion in ruling on Appellant's weight claim. *See Champney, supra*. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 9/23/2024